**UNITED STATES, Plaintiff–Appellee,**

v.

**Larry SARGENT, Defendant–Appellant.**

**No. 96–1065.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1996.

Decided Oct. 22, 1996.

Barry Rand Elden, Chief of Appeals, Jonathan Bunge, argued, Office of the U.S. Attorney, Criminal Appellate Div., Chicago, IL, for Plaintiff–Appellee.

Robert R. Cohen, Lewis Check, argued, Frankel & Cohen, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

A jury convicted Larry Sargent of misrepresentations made on Bureau of Alcohol, Tobacco and Firearm (ATF) forms, in violation of 18 U.S.C. § 924(a)(1)(A), and of misrepresentations made on local gun shop "pistol sheets", in violation of 18 U.S.C. § 922(a)(6). Claiming he was deprived of a fair trial because of the admission of certain evidence, Sargent appeals his conviction. We affirm.

## I.

Between 1991 and 1992, Larry Sargent purchased forty-seven weapons for the Cobra–Stones street gang. To make these purchases, Sargent made a series of false statements on ATF forms 4473 and on "pistol sheets," forms maintained by the gun shops where Sargent made his purchases. Sargent misrepresented his address, his employment, the purpose for which he purchased the guns, and that he, not the Cobra–Stones, was the true purchaser of the guns.

On December 22, 1992, after Sargent purchased six handguns, the Chicago police arrested Sargent and his two accomplices, Cobra–Stone members Dennis Ragsdale and Robert Speight. Sargent made three post-arrest statements. Immediately after his arrest, he acknowledged making the straw purchases on behalf of the Cobra–Stones. On December 23, 1992, Sargent provided ATF agents with a statement in which he claimed he made the straw purchases because the leader of the Cobra–Stones threatened to kill him if he did not furnish the gang with guns. On January 6, 1993, in an interview with ATF agent Dan Volk, Sargent abandoned his coercion justification and admitted that he purchased guns for the gang in exchange for money, protection, and status. Prior to trial, the defense advised the government that Sargent planned to present a coercion defense.

The government filed a motion *in limine* to admit evidence of Sargent's gang membership; the defense filed a motion to exclude such evidence. The court granted the government's motion and denied Sargent's motion because it found the evidence of gang membership was relevant to Sargent's coercion defense. The court cautioned that the evidence would be allowed only "insofar as it was appropriate to give context to the evidence concerning the offense." At trial, the prosecution referred to Sargent's gang membership in its opening statement, during the examination of ATF Agents Volk and Sobol and of Police Officer Charles, and at closing argument. In addition, the prosecution put into evidence Sargent's "gang card," a record of gang membership maintained by police.

The prosecution filed a second motion *in limine* to exclude evidence that Sargent agreed to work as an informant for the ATF in 1990 and wore a wire while making gun purchases for the Cobra–Stones. The court initially granted the prosecution's motion. The defense urged the court to reconsider: this evidence of prior cooperation was vital to the coercion defense because it helped to show that Sargent was reluctant to turn to the ATF a second time because he had received death threats from the Cobra–Stones. The court admitted the evidence.

In turn, the defense filed a second motion *in limine* to exclude evidence that Sargent had been involved in a murder investigation. The prosecution argued that Sargent's connection to the murder investigation was relevant to show that Sargent had only assisted

in the investigation of the Cobra–Stones after having been questioned about the murder, for which he had purchased the murder weapon. The court denied the defense's motion but cautioned the prosecution "not to leave any inference with the jury that Mr. Sargent himself was implicated in the murder." At trial, the prosecution examined Agents Volk and Sobol regarding the murder investigation and the subsequent cooperation. In both examinations, the prosecution clarified that Sargent was not a suspect in the murder, but was only connected to the murder through the weapon. In its closing argument, the prosecution referred to the murder in which Sargent "might be implicated because he bought one of the guns."

At trial, the defense objected to the government's Notice of Intent to cross examine Sargent on alleged prior acts of violence. The court admitted evidence of a 1985 arrest, where Sargent pointed a gun at a woman, threatened to kill her, and beat her face with his fists. The court admitted the evidence as relevant to the coercion defense because it "tend[ed] to demonstrate that the defendant was capable of defending himself in that he had no fear of using a revolver." When questioned on the stand about this arrest, Sargent denied its occurrence. The defense moved for a mistrial, which the court denied. The court instructed the jury not to consider the prosecution's questions as evidence.

The jury convicted Sargent on all counts of the indictment for which he was charged. The court sentenced him to forty-six months of imprisonment and three years of supervised release.

## II.

■ Sargent appeals the district court's decision to allow into evidence the testimony and exhibit relating to his gang membership. He argues that the probative value of the evidence was outweighed by the resulting prejudice and confusion in violation of Federal Rule of Evidence 403. Appellant further contends that the prosecution ignored the court's cautionary instruction and made Sargent's gang membership the centerpiece of their case. We review the district court's admission under Rule 403 for a clear abuse of discretion. *United States v. Irvin*, 87 F.3d 860, 863 (7th Cir.1996); *United States v. Butler*, 71 F.3d 243, 250 (7th Cir.1995).

The prosecution and defense agreed that Sargent purchased forty-seven guns for the Cobra–Stones street gang, but differed as to Sargent's intent. Sargent claimed he was coerced into buying the guns. The government sought to prove that he bought the guns as a service to his gang. Under the prosecution's theory of the case, evidence of gang membership was necessary to explain the motive behind the crime charged, i.e., that Sargent's gang membership was the reason for the crime. Sargent's coercion defense placed greater emphasis on the evidence of gang membership because the government relied upon the gang evidence to counter the defense. The evidence showed that Sargent did not live in fear of the Cobra–Stones, but was one of the Cobra–Stones.

Evidence of gang membership can taint a defendant in the eyes of a jury. This circuit is cognizant of the insidious quality of such evidence and the damage it can do. *Irvin*, 87 F.3d at 864; *Butler*, 71 F.3d at 251; *United States v. Rodriguez*, 925 F.2d 1049, 1053 (7th Cir.1991); *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir.1990). This is not to say that gang membership is never relevant in the criminal trial. Indeed, gang membership can be key to establishing criminal intent or agreement to conspire. *See United States v. Thomas*, 86 F.3d 647, 652 (7th Cir.1996) (collecting cases); *Butler*, 71 F.3d at 251 (collecting cases). In the instant case, evidence of gang membership undermined the coercion defense and explained Sargent's illegal behavior. We conclude that no abuse of discretion occurred in the decision of the district court to admit such explanatory evidence.

■ We are further satisfied that the prosecution's presentation of the evidence was consistent with the court's caution. The defense points to six instances where Sargent's gang membership arose at trial. With the exception of the admission of the gang card, Sargent did not object to the statements or questions complained of. As these five instances were unpreserved for appeal,

we review them for plain error. *United States v. Rivera–Espinoza,* 905 F.2d 156, 159 (7th Cir.1990). First, framing the case for the jury, the government's mantra in both opening and closing statements was "gangs need guns." This theory is not inconsistent with the evidence of the case. The emphasis of this theme by the government is not disproportionate to the quantum of evidence or to the defense's insistence upon Sargent's vulnerability to the intimidating crimes of the Cobra–Stones and its leader in the Cabrini–Green projects. Allowance of such argument does not rise to the level of plain error.

■ Next, the government questioned Agent Volk about Sargent's self incriminating, post-arrest statement, in which Sargent admits to gang membership. The government questioned Chicago Police Officer Charles, who patrolled the Cabrini–Green projects, about Sargent's admission of his gang membership to Charles. The government questioned its rebuttal witness, Agent Sobol, regarding Sargent's prior cooperation with the ATF, a relationship which arose precisely because of his gang membership. The government elicited answers from these law enforcement officials in a straightforward, concise, noninflammatory manner. None of these examinations qualify for plain error.

■ Finally, we review the admission of the gang card for an abuse of discretion. The government offered Sargent's gang card, a police record of his gang membership, into evidence—not to incriminate Sargent, though that was certainly the effect—but to right the record. The defense asked Officer Charles if the police maintained a gang card for Sargent. Charles, unaware of the gang card, answered in the negative. The government produced the gang card to correct the misimpression created by the defense. It was appropriate for the prosecution to respond to the testimony of the uninformed police officer with such remedial evidence and no abuse for the court to admit it. *United States v. Draiman,* 784 F.2d 248, 255 (7th Cir.1986) (government need not "turn the other cheek" when jury is misled).

### III.

■ Sargent appeals the district court's decision to allow him to be cross-examined regarding a 1985 arrest involving an incident in which he allegedly pointed a gun at a woman, threatened to kill her, and beat her face with his fists. Sargent argues that the evidence was irrelevant, remote in time, and designed to inflame the jury. As threshold issues, we address this admission's relevance and prejudicial versus probative value. If relevant and more probative than prejudicial, we would not sanction evidence of Sargent's prior bad act unless it qualifies for an exception under Federal Rule of Evidence 404. *United States v. Murzyn,* 631 F.2d 525, 528 n. 2 (7th Cir.1980).[1] Again, we review under the deferential abuse of discretion standard. *United States v. Zapata,* 871 F.2d 616, 621 (7th Cir.1989).

In the instant case, we do not go beyond our two threshold inquiries. The district court allowed Sargent to be cross-examined regarding his prior arrest because the circumstances of the arrest demonstrated that he was capable of defending himself and comfortable handling a gun. The court found these character traits relevant to a rebuttal of the coercion defense. We con-

---

1. The coercion defense is designed to negate the intent element of a crime. Evidence that undermines the coercion defense thus goes to the defendant's intent. Accordingly, this evidence proffered to rebut a coercion defense would come in under Rule 404(b). In *United States v. Murzyn,* we characterized evidence that rebutted the coercion defense as evidence of predisposition. *Murzyn,* 631 F.2d at 528 n. 2. *Murzyn* is a case of government coercion: "an extreme form of entrapment." The court allows in much evidence as an extension of *Sorrells v. United States,* 287 U.S. 435, 451–52, 53 S.Ct. 210, 215–16, 77 L.Ed. 413 (1932), which encourages evidence of predisposition to rebut a defense of entrapment. The instant case is one of gang rather than government entrapment. The extension of the entrapment-predisposition framework is not as fitting. An individual's predisposition to commit violence says little about the extent to which he may be influenced by threats of violence, particularly threats issued on the part of a well-armed street gang. Rather than evidence of predisposition or evidence of a coercion resistant character, we look to evidence that has a direct bearing on Sargent's relationship with his coercers that would otherwise explain his behavior.

clude that this admission is an abuse of discretion. First, this prior arrest is irrelevant to the coercion defense: brutal abuse of a woman, or, for that matter, prior violent acts more generally, do not demonstrate an ability to defend oneself against a street gang. Second, the probative value of a single example of defendant's facility with a gun is not significant. Sargent's previous positions in the army and as a security guard were already in evidence. From these experiences, the jury could deduce that he was familiar with guns. One instance of Sargent brandishing a gun does not add much to the jury's understanding of him as a gunman. Further, the prejudicial impact of such evidence could be substantial: the unexplained image of Sargent abusing a woman could do much to alienate a jury.

While we determine that admission of testimony surrounding the 1985 arrest was in error, we hold that it is harmless error. If a reviewing court is certain that an evidentiary error did not have "a substantial and injurious effect or influence on the jury's verdict," the error is harmless and the jury verdict stands. *United States v. Hanson,* 994 F.2d 403, 407 (7th Cir.1993) (internal citations omitted); *see, e.g. United States v. Thomas,* 86 F.3d 647, 653 (7th Cir.1996). In the instant case the prejudicial impact of the error was minimal. The cross-examination on this prior arrest was brief. Sargent denied that the arrest ever occurred. The judge instructed the jury that the questions put to Sargent were not evidence. No further reference to the 1985 arrest was made throughout the trial. In this case where the defendant admits to the offense and raises only a defective coercion defense, this unfortunate admission cannot be fairly viewed as having any significant effect on the verdict.

### IV.

Lastly, Sargent appeals the district court's decision to allow into evidence Sargent's connection to a murder investigation. Appellant argues that this evidence should have been excluded under Federal Rule of Evidence 403: the probative value of such evidence is outweighed by the danger of prejudice and confusion. Reversing for only clear abuses of discretion, we review with deference to trial court. *Irvin,* 87 F.3d at 863 (7th Cir.1996).

The district court admitted the evidence because it provided an alternate explanation to Sargent's reasons why he cooperated with the ATF. Sargent testified that he voluntarily came to the aid of the agency. The prosecution presented a version at variance with this altruistic vision. A murder had been committed with a gun purchased by Sargent. Only after the ATF questioned Sargent about his connection to the murder did the ATF and Sargent establish their cooperative arrangement.

We see no abuse of discretion. Sargent's version of his voluntary cooperation with the ATF was less than complete. The prosecution's evidence of the murder was necessary to an understanding of the cooperation. The prosecution contained the potential prejudicial effects of such evidence by underscoring in its examination of the two agents that Sargent was not a suspect in the actual murder, but only connected through his purchase of the gun.

In conclusion, we AFFIRM Sargent's conviction on all counts.