# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3096

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

VALENTINO MONTGOMERY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Western Division.
No. 02 CR 50075—**Philip G. Reinhard**, *Judge.*

———————

ARGUED MAY 21, 2004—DECIDED DECEMBER 3, 2004

———————

Before BAUER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Each Labor Day weekend, Rockford, Illinois, hosts its annual "On the Waterfront" event, which organizers proudly describe as "the grand-daddy of summer festivals." In September 2002, the event lost its festive character for Valentino Montgomery when a police officer noticed a handgun protruding from his pocket. Ultimately, he was arrested and convicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Montgomery challenges his conviction on three grounds, none of which we find persuasive. We therefore affirm.

**I**

On September 1, 2002, Rockford Police Detective James Randall was working security at the On the Waterfront festival in downtown Rockford when he noticed the butt of a handgun sticking out of Montgomery's rear pocket. Detective Randall approached Montgomery, displayed his badge, and then grabbed Montgomery's right arm. Montgomery tried to pull away, and the two began wrestling and fell to the ground. As Montgomery freed himself and ran away, Detective Randall grabbed the gun from his pocket. Montgomery was later found hiding in a closet in a nearby apartment and arrested.

After Montgomery was brought to the Winnebago County Jail, he agreed to speak to Detective Randall and was escorted to the Detective Bureau in the Public Safety Building. Detective Randall and ATF Special Agent Steve Smith advised Montgomery of his rights using the standard Rockford Police Department rights advisory form, which Montgomery signed. Detective Randall then asked Montgomery if he knew why the police had a warrant for his arrest. Montgomery responded, "Yeah, because I got into it with you with that gun—about that pistol." Montgomery then informed Detective Randall and Agent Smith that he had attended the On the Waterfront festival on September 1, 2002; he had a pistol with him that night, which he had purchased a few months earlier; and he had brought the gun to the festival for protection because he was a Stone gang member and there had been tension recently between the Stones and a rival Rockford gang, the Wacos.

On October 22, 2002, Montgomery was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At trial, Montgomery presented quite a different story. He denied that he had carried a handgun at the festival and that he had confessed to having a gun during his interview with Detective Randall and Agent

Smith. The jury was not convinced; it convicted him and he was sentenced to 120 months' imprisonment and three years of supervised release. This appeal followed.

## II

### A

Montgomery first argues that the district court erred in allowing the government to impeach him with his six prior felony convictions when he took the stand at trial. These prior convictions were for the offenses of unlawful possession of a controlled substance, unlawful possession with intent to deliver cannabis, obstruction of justice, aggravated criminal sexual abuse, unlawful possession with intent to deliver cocaine, and unlawful failure to register as a sex offender.

FED. R. EVID. 609(a) provides that, "[f]or the purpose of attacking the credibility of a witness, . . . evidence that an accused has been convicted of such a crime [*i.e.* one punishable by more than a year's imprisonment] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." In *United States v. Mahone*, 537 F.2d 922 (7th Cir. 1976), we articulated a five-part test to guide the district court in the exercise of its discretion in determining whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. See *United States v. Hernandez*, 106 F.3d 737, 739-40 (7th Cir. 1997) (citing *Mahone*, 537 F.2d at 929); *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002). "We emphasize, however, that these factors remain a guide to the discretion of the district court; we shall intervene only when the record establishes that the district

court abused its discretion in deciding to admit the evidence."
*Hernandez,*106 F.3d at 740.

In allowing the government to introduce Montgomery's
prior convictions, the district court applied the *Mahone* fac-
tors. The court found that the first factor—the impeachment
value of the prior crimes—favored exclusion because none
of his convictions went to his truthfulness except the con-
viction for obstruction of justice based on his lying about his
age and allowing himself to be prosecuted as a juvenile
when he was an adult. As to the second factor— the timing
of the prior convictions and the witness's subsequent
history—the court stated that this factor "does not help the
defendant" because "[a]ll are recent in time." Furthermore,
as the charges Montgomery was facing involved a felon-in-
possession offense in 2002, his prior convictions, the earliest
of which was in 1995, easily fell within the ten-year period
of admissibility specified in FED. R. EVID. 609(b). The court
then observed that the third factor—the similarity between
the past crimes and the charged crime— favored admission
because his prior convictions were *not* similar to his current
offense and thus would not tend improperly to suggest to
the jury any tendency on his part to commit the instant
offense. Turning to the fourth factor— the importance of the
defendant's testimony—the court observed that such
testimony is "important in every case," and, given Montgom-
ery's indictment for being a felon-in-possession, the jury
would "know he's a felon, anyway." Finally, the court
considered the fifth factor, the centrality of credibility,
which it saw as the crux of the case in light of the conflict-
ing testimony about Montgomery's statements during his
interrogation. Taking everything into account, the court
concluded that, while six "convictions has a pretty high
connotation of prejudice, . . . the probative value of a
person's credibility is such that the jury is entitled to weigh
[it]." To guard against such prejudice, the court instructed
the jury on the limited purpose of this evidence both at the

conclusion of the government's cross-examination of Montgomery and when it charged the jury.

On appeal, Montgomery concedes that his "credibility was central to the issue of whether he possessed the pistol on the night in question," but nonetheless objects that "the sheer weight of the number of prior felonies prohibited him from receiving a fair hearing from the jury." He thus argues that the court "abused its discretion by allowing each and every one of the defendant's felony convictions to be used for impeachment."

We cannot find that the district court abused its discretion in allowing Montgomery's prior convictions to be admitted into evidence. The court weighed each of the relevant factors identified in *Mahone* and, in doing so, it reached a conclusion consistent with the law in this area. In *United States v. Nururdin*, 8 F.3d 1187 (7th Cir. 1993), for example, we considered whether the court abused its discretion in allowing the government to impeach the defendant, who was indicted as a felon-in-possession, with his four prior felony convictions. We affirmed, noting that "[t]he trial court explicitly relied on the fourth and fifth factors:  the importance of the defendant's testimony, and the centrality of the credibility issue" because the "defendant and the officers offered conflicting accounts of the events leading to defendant's arrest." *Id.* at 1192 (internal quotation marks omitted). We further observed that "any prejudicial effect that the introduction of the prior felony convictions could have had was overcome by the court's limiting jury instruction, which directed that this evidence could not be used to demonstrate a propensity to commit crime, but could only be used to impeach the defendant's testimony." *Id.*; see also *Hernandez*, 106 F.3d at 740 (finding that the court did not abuse its discretion in admitting a prior conviction because that conviction was "valu[able] in assessing the credibility of the defendant" and "the court's instruction cautioned the jury that the conviction was to be considered solely to assess the credibility of the defendant").

As in *Nururdin*, the district court here correctly recognized that even if some of the *Mahone* factors were neutral or favored exclusion, the central role of Montgomery's testimony and the importance of his credibility strongly favored the admission of his prior convictions. We have recognized that "'evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony,'" *United States v. Galati*, 230 F.3d 254, 262 (7th Cir. 2000) (quoting *United States v. Neely*, 980 F.2d 1074, 1081 (7th Cir. 1992)), but there is no rule barring such evidence. Furthermore, here the district court took the precaution of providing a limiting instruction regarding this evidence to mitigate its prejudicial impact. See *Nururdin*, 8 F.3d at 1192. Given the dissimilarity of Montgomery's current offense and his prior convictions; the recent time frame of those convictions; the centrality of his credibility to the case; and the importance of his testimony contesting Detective Randall's account of his incriminating statements, we are confident that the district court did not abuse its discretion in admitting the prior convictions.

## B

Montgomery next argues that the district court erred in allowing into evidence his incriminating statements to the police. He does not appear to challenge directly the district court's decision to credit the police officers' testimony regarding the interrogation and their use of the Rockford Police Department's standard rights advisory form. Rather, Montgomery "requests for many of the same reasons cited in the *Miranda* opinion this court take the bold step of bringing the Constitutional protections of our forefathers into the 21st century." Specifically, he asks us to expand the scope of *Miranda* by finding his statements inadmissible because his interrogation was not electronically recorded.

It is true that legislation in this area is evolving. In some states, including Illinois, there are now laws mandating that police officers record certain custodial interrogations. See, *e.g.*, 725 ILCS 5/103-2.1(b) (2004) (establishing that any oral or written statement of an accused shall be presumed inadmissible as evidence in a criminal proceeding for homicide unless "an electronic recording is made of the custodial interrogation" and such recording "is substantially accurate and not intentionally altered"); TEX. CRIM. PROC. CODE ANN. Art. 38.22 § 3(a) (Vernon 2004) (providing that no oral statement of an accused "made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless [ ] an electronic recording . . . is made of the statement" and "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered"); see also *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994) ("[I]n the exercise of our supervisory power to insure the fair administration of justice, we hold that all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention. If law enforcement officers fail to comply with this recording requirement, any statements the suspect makes in response to the interrogation may be suppressed at trial."). But no one has intimated that these laws were constitutionally required, and we see no hint that the Supreme Court is ready to take such a major step. We therefore decline Montgomery's invitation to enlarge *Miranda* so as to require the electronic recording of all interrogations. As this is his only argument challenging the admission of his statements to the police, we conclude that those statements were also properly brought into the case.

**C**

Montgomery's third and final argument on appeal arises from the government's introduction of evidence of his membership in the Stones gang. Montgomery urges us to find that this evidence was so prejudicial that it had to be excluded under FED. R. EVID. 403, which says that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Because Montgomery did not object to the introduction of this evidence at trial, however, he may prevail only if he establishes that its admission met the exacting plain error standard. *United States v. Harris*, 271 F.3d 690, 700 (7th Cir. 2001). To establish plain error, Montgomery must show: (1) an error; (2) that is plain; (3) that affected his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Moore*, 363 F.3d 631, 639 (7th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). Montgomery has not met these criteria.

"We are fully cognizant of the powerful nature of [gang-related] evidence; when introduced by the government against a criminal defendant, it can taint a defendant in the eyes of the jury and also can establish criminal intent or agreement to conspire. For this reason, in our review we examine the care and thoroughness with which a district judge considered the admission or exclusion of gang-involvement evidence." *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997) (internal citation omitted); see also *United States v. Richmond*, 222 F.3d 414, 417 (7th Cir. 2000) ("Evidence of gang involvement must be considered carefully to avoid undue prejudice."). We recognize that "[g]angs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with

gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted." *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996).

At the same time, "[w]e have consistently held that, under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice." *Id.* at 864; see also *United States v. Butler*, 71 F.3d 243, 251 (7th Cir. 1995) (collecting cases from this and other circuits). In *United States v. Sargent*, 98 F.3d 325 (7th Cir. 1996), for example, we held that the district court did not abuse its discretion in admitting gang membership evidence where the government argued that the defendant acted on behalf of his gang in making the gun purchases that led to his indictment and conviction, *id.* at 328-29. "Under the prosecution's theory of the case," we explained, "evidence of gang membership was necessary to explain the motive behind the crime charged, *i.e.* that [the defendant's] gang membership was the reason for the crime." *Id.* at 328. See also *United States v. Lloyd*, 71 F.3d 1256, 1265-66 (7th Cir. 1995) (upholding admission of evidence showing gang affiliation where it was used, in part, to explain the defendant's motivation for possessing a firearm). We cautioned in *Butler*, however, that "[o]ur decision today should not be construed as a blanket rule allowing the admission of gang membership in all strict liability gun possession cases. We hold only that . . . where there is a strong and direct link between the gang activity introduced and the possession of the firearm, that the district court did not err in finding the evidence more probative than prejudicial." 71 F.3d at 252 n.6.

As in *Sargent*, *Lloyd*, and *Butler*, there was a "strong and direct link" between Montgomery's gang membership and his possession of a firearm at the On the Waterfront festival. Indeed, the record shows that Montgomery himself first drew the connection in his statements to the police

after he was taken into custody. According to the government, Montgomery stated that he had brought the gun to the festival because he was a member of the Stones gang and "there had been problems with the other rival gang, which are the Wacos." Detective Randall also testified that Montgomery told him that "he had brought the gun down to the waterfront for protection." Thus, Montgomery's gang membership "does make it more likely that he actually did possess [the gun] and knowingly possessed it." *Butler*, 71 F.3d at 251. Montgomery acknowledges that this is why the government wanted to use the statements to the police. Yet rather than arguing that no meaningful connection existed between his statements to the police and his gang membership, Montgomery only denies that he ever made such statements and reiterates his argument that *Miranda* mandates that his interrogation be recorded, which we have already rejected. Montgomery does not suggest that the introduction of his gang membership would have been inappropriate if he *had* made the alleged statements.

In our view, the district court did not err at all, let alone plainly err, in admitting the evidence of Montgomery's gang membership. The probative value of this evidence in establishing why Montgomery might have carried a weapon at the festival substantially exceeded its prejudicial impact. Furthermore, once again the district court took the useful precaution of giving the jury a limiting instruction. The court instructed: "You heard testimony of gang membership of the defendant. This is admitted only as it relates to any purpose or motive for possessing the pistol, and, of course, it is up to you to determine whether he did possess the pistol. This evidence cannot be considered by you for any other purpose." Such an instruction can help significantly to mitigate the potentially prejudicial effect of gang-related evidence. See *Butler*, 71 F.3d at 251 (emphasizing that the court provided "a strong and careful instruction that the gang testimony should only be used to determine whether

[the defendant] possessed the gun, and not for any other purpose"); *Lloyd*, 71 F.3d at 1265-66 (noting that the court instructed the jury that evidence of the defendant's gang affiliation could be used "only for the limited purpose [ ] of understanding . . . his motive to possess a firearm"). Given the direct link between Montgomery's gang membership and his statements to the police as to his motivation for carrying the gun, the limited purpose for which this evidence was admitted, and the court's instruction to that effect, we cannot find that the district court plainly erred in admitting this evidence.

## D

In his final effort to secure relief, Montgomery asserts that the district court erred in denying his motions for judgment of acquittal and for a new trial. The only arguments that Montgomery makes in support of this claim are those we have already reviewed. As we have already found those arguments to be without merit, we similarly reject his effort directly to obtain an acquittal or a new trial on those bases.

## III

We therefore AFFIRM the judgment of the district court.

**A true Copy:**

    **Teste:**

                        _____
                        *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*