BECKER, Circuit Judge, dissenting.
BECKER, Circuit Judge.
In United States v. Abel, 469 U.S. 45, 54-56, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), the Supreme Court established that impeachment of a witness through gang affiliation may be attempted only if that gang affiliation is sufficiently probative of the witness’s possible bias toward the defendant. As Abel clearly implies, gang-related evidence is insidious, and the dangers of admitting it are great. As Judge Flaum wrote in United States v. Irvin, 87 F.3d 860, 865 (7th Cir.1996):
Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury’s negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted.[2]
These precepts are as true today as they were then. While the majority does not deny their validity, it, in effect, deflects them by downplaying the extent of the imputation of gang activity to Molina and its impact on Gonzalez’s case. Its efforts are flawed.
The majority accurately describes the testimony of Officers Krivulka and Leighthardt, but it neglects to explain why Molina’s testimony was crucial: The case against Gonzalez came down to a credibility test between the officers’ testimony and that of the witnesses put on by Gonzalez. Molina’s testimony was crucial because (1) he was present that night and observed the events testified to by the officers; (2) he claimed that Gonzalez was not in or near the gold car that was parked in front of 218 West Sergeant Street (the car in which the gun was found); and (3) he states that Gonzalez arrived at the scene in a white car. Molina’s testimony was corroborated in significant part by that of Margaret Saunders, the neighbor who initially called in the disturbance, who was also present. In the absence of any physical evidence tying Gonzalez to the gun, the eyewitness testimony was critical. Since it was conflicting, the undermining of Molina’s testimony by insinuating his membership in a gang is center-stage in this appeal.
To be sure, as the majority explains, Molina was otherwise impeached. But the clear and repeated intimations that Molina was associated with a gang were inappropriate and may well have tipped the balance in the prosecution’s favor. The insinuations and their frequent repetition are demonstrated by the excerpts from the transcript, attached as an appendix to this opinion. In one particularly egregious line of questioning, the prosecutor names certain people and asks Molina if he knows any of them. When Molina answers in the negative, she nevertheless assumes not only their very existence, but also their membership in a gang:
*586 Q. Do you know anyone by the name of Raffi? Is that a no?
A. No.
Q. Freddie? June Bug? That’s a no?
A. No.
Q. And Mike?
A. No.
Q. Well, I guess you could know a Mike, but any of those people live in the area of 8 and Ontario, or hanging out there? Doesn’t ring a bell?
A. No.
Q. You don’t know that? You don’t know anybody associated with those gangs?
(App.l32a-133a). When Gonzalez’s counsel objected, the prosecutor withdrew the question and stated within hearing of the jury: “[Wje’ll just indicate that he doesn’t know the people by those names.” (App. 133a).
Compounding the problem is that the prosecution never demonstrated a foundation for inquiring into Molina’s gang activity (which Molina denied). The prosecutor represented to the Court that one Detective Brown had given her information that led her to believe that Molina and Gonzalez were members of the same gang (hence Molina’s putative bias), but she never made a proffer supplying the basis for her claimed good faith belief. Neither did the District Court ask her to supply one. The District Court was understandably wary of pursuing this line of inquiry too far and ultimately cut it off, but not before the damage had been done.
In my view, in the absence of much stronger foundation, the jury should not have been permitted to hear the gang insinuations; rather they should have been “cut off at the pass.” Neither was the error harmless, notwithstanding the other assaults on Molina’s credibility, for the harmless error standard applicable to the trial error claim is high probability that the error did not contribute to the judgment. See United States v. Gambone, 314 F.3d 163, 177-78 (3d Cir.2003). “‘High probability requires that the court possess a sure conviction that the error did not prejudice the defendant.’” Id. (quoting United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir.1995) (en banc) (citations omitted)). Given that I do not possess that conviction, I respectfully dissent, and would reverse and remand for a new trial.
APPENDIX
Q. Do you know the Carbonells?
A. Excuse me?
Q. Do you know the Carbonells?
A. Carbonells? No.
Q. Carbonellis?
A. Uh-uhm.
Q. Is that a no?
A. Yeah, that’s a no, I don’t know them.
Q. I’d like you to tell us, on your arms you have a number of tattoos, is that not correct?
A. Yeah, yeah.
Q. And—
MR. COOPER: Objection, Your Honor.
THE COURT: Overruled.
Q. In particular, you have one tattoo on your forearm, have you not?
A. Yeah.
Q. Can you tell us what it says, the one that has some language on it?
A. What it says?
Q. Yes.
A. Well, it says — you want me to say the whole word, the whole thing?
Q. You have it on your arm.
A. It says fuck the law.
Q. And you have that tattooed on your arm?
A. Yeah.
*587 Q. And you have a number of other tattoos on your body, is that correct?
A. Yeah.
Q. And are those tattoos associated with a particular gang that you’re a member of?
A. No.
Q. You’re not a member of a gang, you’re not involved with any gangs?
A. No.
Q. And that statement’s as true as everything else you said here today, is that right?
A. Yeah.
# * i>,i # %
Q. Do you know anyone by the name of Raffi? Is that a no?
A. No.
Q. Freddie? June Bug? That’s a no?
A. No.
Q. And Mike?
A. No.
Q. Well, I guess you could know a Mike, but any of those people live in the area of 8 and Ontario, or hanging out there? Doesn’t ring a bell?
A. No.
Q. You don’t know that? You don’t know anybody associated with those gangs?
MR. COOPER: Objection, Your Honor. There’s been no foundation laid that there is a gang or anyone is known in a gang or anything like that. It’s assuming a fact that’s not in evidence.
THE COURT: You want to rephrase the last question.
MS. BENJAMIN: I guess I’ll leave it as it was before and withdraw the last question and we’ll just indicate that he doesn’t know the people by those names.

. See also United States v. Sargent, 98 F.3d 325, 328 (7th Cir.1996) (noting “the insidious quality of such evidence and the damage it can do”).