**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0246n.06
Filed: April 1, 2009

**No. 06-4464**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GIONE SMITH, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and GILMAN, Circuit Judges; MILLS,[*] District Judge.

**PER CURIAM.** The defendant, Gione Smith, appeals from the district court's judgment of conviction based on a jury's determination that he was guilty of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Smith contends that the district court incorrectly denied his motion to suppress evidence seized from his vehicle following a traffic stop and his post-arrest statements to police and erred in denying his motion *in limine* "off the record." We find no reversible error in connection with either of the district court's rulings and, therefore, we affirm the conviction. We further note that the defendant has raised an unsupported challenge to the sentence imposed by the district

---

[*]The Hon. Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

court, "solely for the purpose of preserving his right to possible Supreme Court review" of the district court's enhancement based on the fact that the serial number on the weapon was obliterated. Because that issue does not require our review, we opt to pretermit it.

**FACTUAL AND PROCEDURAL BACKGROUND**

The felon-in-possession charge against defendant Smith arose from a traffic stop in Norton, Ohio, a short distance west of Akron. After Smith was pulled over by Officer John Canterbury for driving more than 20 miles per hour over the speed limit, he handed Canterbury a Florida driver's license and his proof of insurance. When Canterbury questioned the fact that the car had Ohio license plates, Smith said that he had a business in Akron. Canterbury then asked if Smith "had ever received a citation in the State of Ohio," and Smith responded that he had. Canterbury returned to his patrol car to check the validity of the Florida license, leaving Smith seated in his own vehicle. At the same time, Canterbury also ran Smith's name and date of birth through the computer and discovered that Smith's Ohio driver's license had been suspended three times, the last suspension resulting in the forfeiture of the license. Pursuant to policy, Officer Canterbury arrested Smith for driving on a suspended license and took him into custody, seating him in the back of the patrol car.

Before Smith's car was towed, officers called to the scene ran an inventory search of the vehicle and found live ammunition in the passenger compartment, which led to a more thorough search that turned up the components of a disassembled 9-millimeter Smith

& Wesson pistol, all within reach of the driver's seat. Two components were found in the console, one part was located in the glove compartment, one piece was stuffed between the console and the driver's seat, and another was located between the console and the passenger seat. An officer testifying at trial demonstrated that the pistol could be disassembled in less than ten seconds, certainly within the few minutes' time that it had taken Canterbury to run the records check. (Reassembled, the pistol was later fired and found to be fully operational.) Also within the driver's reach were an unloaded magazine for the pistol and 14 rounds of live ammunition. Behind the driver's seat police found a leather holster that fit the pistol. In the trunk of the car they found three bags that contained, among other things, two magazines loaded with 9-millimeter ammunition, five flex ties usable as handcuffs, a stun gun, glass cutters, wire cutters, two pry bars, a box cutter, an optical device, several flashlights, black gloves and a black ski mask, and various items of camouflage clothing.

Defendant Smith was later interrogated in his cell at the Norton jail. Lieutenant Than Hete read Smith his *Miranda* warnings but did not videotape or record the interrogation, nor did he take any notes during questioning. According to Hete, Smith reported that the 9-millimeter pistol and the bags in the trunk belonged to a friend named Terrance Shavers, who was in the military and had deployed to Iraq five days earlier. When Hete indicated that the gun would be tested to see if Smith's fingerprints were on any part of it, Smith attempted to deflect any suspicion by telling Hete that he and Sgt. Shavers had fired the weapon at a local shooting range two days before Shavers left the

country. When asked why the serial numbers had been filed off the pistol, Smith told Hete that the weapon had been stolen from his apartment during a burglary, that he had managed to track it down and buy it back, and that the serial numbers were missing when he recovered the pistol. Smith also had on his person a military ID card in Terrance Shavers's name.

Prior to trial, Smith moved to suppress the evidence found in the car on the ground that the scope of search was excessive, given the circumstances of the initial traffic stop. He also moved to suppress the statements that he had made to police because the interrogation was not recorded. The district court ruled that the government could not use any statements made by Smith before he was given *Miranda* warnings but denied the motion to suppress. Smith also filed a motion *in limine* to exclude evidence seized from the trunk as highly prejudicial and unrelated to the firearm charge. The district court denied the request but, according to the defendant, did so "off the record." In fact, the record indicates that the motion *in limine* was denied in a marginal entry.

At trial, Smith moved for acquittal at the end of the government's proof and renewed the motion after the defense rested its case, arguing that the government had failed to offer sufficient evidence to convict. The district court denied both motions. The jury found Smith guilty of being a felon in possession of a firearm, and the district court sentenced him to 55 months in prison.

### *DISCUSSION*

The only issue raised at the suppression hearing that has been preserved on appeal is the defendant's contention that the scope of the search incident to his arrest exceeded the purpose of the stop, making his arrest unconstitutional for lack of probable cause. This argument is based on the theory that once the defendant presented a valid Florida license, he should have been ticketed for speeding and allowed to go on his way. Officer Canterbury, the defendant insists, had no valid basis for checking the Ohio traffic offense records and, thus, should not have extended the stop, charged him with driving on a suspended license, or – most crucially – searched the passenger compartment and the trunk of his car.

We find no merit to this argument, although not because the bare legal proposition is unsound. Indeed, as the defendant points out in his brief, following a proper *Terry* stop, "the degree of intrusion [must be] reasonably related in scope to the situation at hand." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). But in this case, the officer did not, in fact, make a *Terry* stop. Instead, he stopped the vehicle because the driver had exceeded the speed limit by over 20 miles per hour, a fact that the defense does not dispute. Hence, the officer's action was not made based upon the "reasonable suspicion" at issue in *Terry v. Ohio*, 392 U.S. 1 (1968), but upon probable cause to issue a citation. Moreover, when Smith admitted to the officer that he had been cited for a traffic offense in Ohio – one that did not show up on the record produced by a check on his Florida

driver's license – and given the fact that his car carried Ohio license plates, the officer was clearly acting properly in checking the defendant's Ohio record as well as that in Florida.[1] The Ohio record, of course, provided a basis for charging Smith with an offense more serious than a mere speeding violation and justified Canterbury's decision to take him into custody, rather than merely to issue a traffic citation and permit Smith to drive away. Clearly, the district court did not err in denying the defendant's motion to suppress the items seized from the vehicle post-arrest.

Nor do we find any merit to the defendant's contention that his "*Mirandized*" statements to police should have been suppressed because they were not videotaped during the interrogation in his jail cell. There simply is no authority to support this argument. In fact, other circuits have held that the police are not constitutionally required to videotape or audiotape such interviews. *See, e.g.*, *United States v. Tykarsky*, 446 F.3d 458, 477 (3d Cir. 2006); *United States v. Smith-Baltiher*, 424 F.3d 913, 925-26 (9th Cir. 2005); *United States v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004); *United States v. Yunis*, 859 F.2d 953, 960-61 (D.C. Cir. 1988). We have also so held, although in an unreported decision. *See United States v. Dobbins*, No. 96-4233, 1998 WL 598717, at *3-4 (6th Cir. Aug. 27, 1998).

---

[1] The proof showed that Smith had applied for a Florida driver's license while he was in Florida temporarily to attend a training course, giving as his residence the address of the building where the course was being taught.

The defendant next complains that the district court committed reversible error in failing to make a ruling "on the record" in response to his motion *in limine* to exclude evidence of the items seized from the trunk of his car and statements he made to police about firing the Smith & Wesson at a shooting range as improperly prejudicial under Federal Rule of Evidence 404(b). There is no basis for this assertion, given the fact that the district court denied the motion in a marginal entry, a practice that we have repeatedly discouraged, *see, e.g.*, *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1015, n.7 (6th Cir. 2003), but one that is, nevertheless, a ruling on the record. Because there was no reasoning provided for the denial, the defendant is correct in asserting that we are – theoretically, at least – hampered in our review of the propriety of the district court's ruling on appeal. But as a practical matter, we find that the record in this case is sufficient to permit us to discern the grounds for the district court's decision.

First of all, there is no legal basis for excluding the defendant's statement to Officer Hete with regard to his shooting the pistol at a shooting range a short time before his arrest. The statement was made after the *Miranda* warnings were given, and it was clearly relevant to the question of guilt. As for the items seized from the trunk of Smith's car, the prosecution contended that Smith's theory of defense made the evidence in question both relevant to the charge against the defendant and more probative than prejudicial. Smith had initially told police that the dismantled pistol found in the passenger compartment was not his, that he had been unaware of its presence in his vehicle, and that he had no idea why its owner, Sgt. Shavers, would have left it there disassembled. When Officer Hete

suggested that the weapon would be tested to see if it bore his fingerprints, Smith replied that his fingerprints would be found on the pistol because he had fired it at the shooting range, where he went with Shavers some nine or ten days before his arrest. He further disclaimed ownership of the items found in the trunk, telling Hete that whatever was in the bags belonged to Shavers and that he, Smith, was merely their custodian while Shavers was in Iraq.

To bolster this defense, Shavers was called to testify and claimed ownership of the disassembled pistol. He said that while sitting in Smith's car, he had taken the weapon apart to clean it but was interrupted by a telephone call before he could finish the job. Shavers told the jury that because the phone call "was urgent," he had "started rushing" and "put some things in the center console[,] . . . some things in the glove compartment and . . . also put the rounds [of ammunition] . . . in the car," although he did not explain why that activity was necessary before taking the urgent call or why he did not go back to retrieve the dismantled weapon. Shavers maintained that Smith did not know about the pistol's presence in the car because "he was in the house" at the time. Shavers also said that it was he, and not Smith, who had bought back the pistol after it was stolen from Smith's apartment. When asked how he could be sure that it was his gun, given that the serial numbers had supposedly been filed off after the pistol was stolen, Shavers

responded, "Pretty much like you're not going to see that weapon everywhere. I mean, when I first seen it, I was like looking at it, so I pretty much figure[d] that was my weapon."[2]

The defendant now argues that the items seized from the trunk of his car were shown to the jury for one purpose only: to establish his bad character by insinuating that he was in possession of items that could be used to commit a crime. Of course, the evidence in question would not have been admissible for that purpose, pursuant to Federal Rule of Evidence 404(b). On the other hand, the government contended that the presence of these items in Smith's car was circumstantial evidence of the specific-intent element of the possessory offense with which Smith was charged, *i.e.*, knowledge. The government postulated that because the items in the trunk, including ammunition for the 9-millimeter pistol, appeared to be useful in a home invasion or burglary, they were suggestive of criminal intent. This evidence was, according to the prosecution's argument, relevant to establish that the pistol was *knowingly* possessed by Smith at the time of his arrest and to

---

[2] Shavers also offered what the jury must have seen as thoroughly unconvincing explanations for several of the items found in the trunk of the car, saying that they were "government issue" for use by military personnel in Iraq, even though there were no identifying markings on items such as the ski mask ("for cold weather"), the flex ties ("used as safeties for the weapons"), several rolls of duct tape ("[w]hen you come from Iraq back to the States, as a soldier you have to tape up all your bags"), and the box cutter (used for "urban warfare and whatnot"). When asked why he did not take these government-issued items and others like them with him when he returned to Iraq just a week before Smith's arrest, he said that he had duplicates there and did not need the ones that he left behind.

rebut the defendant's theory that it had simply been left in his car, inadvertently, by a third party.[3]

Under these circumstances, it is obvious that the defendant's motion *in limine* was denied because the district court found that the evidence in question was relevant to the government's case and that its probative value outweighed its prejudicial effect. We review this ruling for abuse of discretion, *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007), and in this case we find none. Even if the denial of the defendant's request to exclude the evidence were considered error, in view of the undisputed evidence that the pistol was found in his possession – indeed, within reach in his own vehicle – we conclude that the error was, at most, harmless.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.

---

[3] The government further connected the evidence to Smith through testimony by a police department employee, Michelle Toris, who said that a month after his arrest, Smith had called to claim ownership of the items seized from his car and asked to have his property returned to him. According to Toris, the defendant was allowed to take possession of several items found in the trunk, including "a backpack containing [an] Xbox, the Xbox controller, a game, also a gym bag with clothing and shoes, a Kodak camera, checkbook, three crosses , two  necklaces, a bag of air fresheners and lotion," which were "those . . . items that were not pertinent to this case."