In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-4017

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEROME HARRIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 828—**Amy J. St. Eve**, *Judge.*

ARGUED JANUARY 12, 2009—DECIDED NOVEMBER 25, 2009

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and SYKES, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. After Jerome Harris, a convicted felon, threw a bag containing drugs to the ground, he was arrested and read his *Miranda* rights. Harris told the officers that he had dropped guns off at his girlfriend's home earlier that day and later showed the officers exactly where to find them. He also acknowledged that he had been holding a bag containing drugs

and then tossed it when he saw the officers, although he said he was holding the drugs for someone else. Needless to say, Harris's statements did not serve him well at trial. A jury convicted him of being a felon in possession of a firearm and of possessing a mixture containing crack cocaine with the intent to distribute it. In light of Harris's statement that he was only holding drugs for another person, we uphold the admission of testimony concerning Harris's prior drug sales as it was relevant to show that he intended to distribute the drugs he held. Testimony from Harris's girlfriend concerning statements he made to her about having guns was harmless in light of his admission to the officers that he had stored two guns in her apartment that very morning. Finally, the district court did not err when it admitted testimony from a police sergeant even though it might have suggested Harris's membership in a gang, as the testimony helped establish that Harris had possessed firearms. Therefore, we affirm Harris's convictions.

## I. BACKGROUND

On April 2, 2006, a citizen approached three Chicago police officers on patrol and told them about suspicious activity in a nearby alley. The officers drove to the alley in their unmarked police car. There, the officers saw that after Jerome Harris noticed their car, he threw a clear plastic bag to the ground and began to walk away. The officers picked up the bag and discovered that it had twelve individual bags inside it. Each contained a white, rock-like substance. Harris was arrested on the

suspicion, later confirmed, that the substance was illicit, and he was read his *Miranda* warnings.

Harris told the officers that he knew of an apartment where guns and drugs were kept. Police went to the address Harris provided and found an inoperable .32 revolver. Harris also told one of the officers that he had stored two firearms that morning at the residence of his girlfriend, Porsche Andrews, although he said he probably should not be saying so. Officers went to Andrews's apartment where Andrews's grandmother, the leaseholder of the property, consented to a search. After the officers' initial search did not yield any guns, the officers brought a handcuffed Harris into the home. Harris indicated the location of the guns to the officers, and the officers recovered a loaded .40 semi-automatic handgun and a loaded .45 pistol from a storage container inside Andrews's bedroom. In response to an officer's question of whether the guns were operable, Harris responded with something along the lines of, "Hell, yeah, they work. I shot them both on New Year's Eve."

The three arresting officers testified at trial. One of the officers testified that Harris told him that "he got the drugs . . . from a shorty, which is a street name for a child, and that he was holding . . . them because he knew the child's mother and he was trying to do the child a favor." Andrews's grandmother testified that the guns did not belong to her or anyone in her household. Andrews testified as well. She stated that the guns found in her bedroom did not belong to her. She also said that Harris had been in her room on the morning

of his arrest and told her he had left something in her room. Andrews further testified that she had dated Harris for the two years leading up to his arrest and that on at least five occasions while they were dating, she saw persons give Harris money in exchange for plastic bags containing a lumpy, off-white form of cocaine. She also told the jury that on several occasions, Harris "brag[ged] about what he would do to people and the weapons he had" and he "would brag how he'd kill somebody or how he'd shoot them."

A jury convicted Harris of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession with the intent to distribute a mixture containing cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). He received a sentence of 120 months' imprisonment.

## II. ANALYSIS

A. Earlier Drug Sales Admissible

Harris first contests the admission of Andrews's testimony that he had sold drugs on at least five occasions before his arrest in this case. He maintains that this testimony suggested only that he had a propensity to sell drugs and that Federal Rule of Evidence 404(b) therefore precluded its admission. We review the admission of this evidence for an abuse of discretion. *See United States v. Price*, 516 F.3d 597, 603 (7th Cir. 2008).

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character

of a person in order to show action in conformity there-with. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Harris points to our case law stating that evidence may be admitted over a Rule 404(b) objection only when four conditions are met:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Moore*, 531 F.3d 496, 499 (7th Cir. 2008) (quoting *United States v. Ross*, 510 F.3d 702, 713 (7th Cir. 2007)). He contends those requirements have not been met here.

We turn first to the important question of whether evidence of Harris's prior drug sales tended to establish a matter other than a propensity to deal drugs. The government answers that question in the affirmative, contending it shows Harris's intent to sell the drugs he acknowledged possessing. We long ago rejected the proposition that a drug conviction is always admissible in a later, different drug prosecution. *United States v. Beasley*, 809 F.2d 1273, 1277-79 (7th Cir. 1987). Nonetheless,

there is tension in our case law as to whether prior drug convictions are always admissible in a subsequent drug prosecution where intent is an element. *See United States v. Webb*, 548 F.3d 547, 547-48 (7th Cir. 2008) (collecting cases and discussing the tension). Under the circumstances of Harris's case, however, our cases are in harmony. "The most obvious justifiable situation in which prior convictions are admissible in drug prosecutions on the issue of intent are in those situations in which the defendant, while admitting possession of the substance, denies the intent to distribute it." *United States v. Jones*, 455 F.3d 800, 808 (7th Cir. 2006); *see also, e.g., Moore*, 531 F.3d at 500; *United States v. Hurn*, 496 F.3d 784, 787 (7th Cir. 2007). That is the case here.

Evidence that Harris had sold drugs in the past helped establish a matter at issue in the case, namely whether Harris intended to distribute the drugs he acknowledged he had been holding. Because he admitted holding the drugs but said he was simply holding them for a neighborhood child, evidence that he had sold drugs in the past rebutted his statement and was probative of whether he intended to sell the drugs he claimed he was only holding.

Andrews's testimony also related drug sales that were sufficiently similar and close in time to the April 2, 2006 transaction. Andrews testified that she had dated Harris for the two years prior to his arrest and that she had watched him sell the same substance (a lumpy, off-white form of cocaine), in the same packaging (small plastic bags), in the same area of Chicago, and that he did so on

five separate occasions. Her testimony also reflects that, at most, the transactions took place within two years of the date of the conduct charged in this case, making them sufficiently close in time. *See Ross*, 510 F.3d at 713 (finding that acts from five and six years earlier were sufficiently close in time under Rule 404(b) analysis).

Next, although Harris maintains Andrews's testimony was vague, her testimony readily supported a jury finding that Harris had sold drugs before. Andrews testified that she was present when Harris sold drugs on at least five occasions. She explained that she personally witnessed him give plastic bags of cocaine in exchange for cash on each of those occasions. She also testified that she observed Harris sell drugs at least five but not more than ten times, narrowing the range of times that she claimed to have witnessed Harris sell drugs. A jury could have easily concluded from Andrews's testimony that Harris had sold drugs as she described. *See United States v. Curtis*, 280 F.3d 798, 802 (7th Cir. 2002) ("[W]itnesses' testimony that they . . . saw the defendant selling drugs is sufficient to support a jury finding that he did engage in that conduct.").

Finally, the probative value of Andrews's testimony that Harris had dealt drugs in the past outweighed any danger of unfair prejudice in this case. The evidence refuted Harris's contention that he did not have the intent to distribute the drugs he was holding and countered his statement to the police that he was only holding the drugs for another person. In addition, the district court gave a limiting instruction that helped

reduce the danger of any unfair prejudice from Andrews's testimony. *See Jones*, 455 F.3d at 809 (observing that limiting instructions can be effective in reducing possible unfair prejudice that could result from the introduction of Rule 404(b) evidence). The court instructed the jury that it could only consider evidence of Harris's acts other than those charged in the indictment "on the question of intent, knowledge or absence of mistake or accident. You should consider this evidence only for this limited purpose." Accordingly, the district court did not abuse its discretion when it allowed Andrews to testify about Harris's prior drug dealing.

B.   Admission of Statements Regarding Gun Ownership Harmless

Harris also contends that Andrews should not have been allowed to recount his statements about owning and using guns. Andrews testified that Harris spoke about guns on several occasions while they were dating, and that he "would brag about what he would do to people and the weapons he had" and "would brag how he'd kill somebody or how he'd shoot them." She acknowledged on cross examination that she had never actually seen Harris with a gun.

One of the counts presented to the jury was the charge that Harris was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A conviction on that count required the government to prove that Harris was (1) a felon, (2) who had possessed a firearm, (3) that had traveled in interstate commerce. *See United States v.*

*Wallace*, 280 F.3d 781, 784 (7th Cir. 2002). Harris stipulated that he was a felon and that the firearms at issue had traveled in interstate commerce, but he denied that he had possessed any firearms. Therefore, the only issue at trial on the felon-in-possession count was whether Harris possessed firearms. The government can prove either actual or constructive possession to satisfy the possession requirement in 18 U.S.C. § 922(g)(1). *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009). Harris was not caught with firearms on his person, and the question for the jury was whether he constructively possessed the guns found in Andrews's bedroom.

Constructive possession exists when, although an individual does not have immediate, physical control of the object, he "knowingly has the power and intention at a given time to exercise dominion and control over the object." *United States v. Kelly*, 519 F.3d 355, 361 (7th Cir. 2008). Andrews did not state the exact time during the course of the two-year relationship that Harris made the statements bragging about his guns. Harris therefore contends there was a danger that the jury convicted him based on a propensity to possess firearms, not on whether he actually possessed them on April 2, 2006. That danger is not present here. The evidence of Harris's gun possession was very strong, and it rendered any potential error concerning the admission of Andrews's statements harmless. *See United States v. Savage*, 505 F.3d 754, 762 (7th Cir. 2007) (error harmful only if it "had a substantial influence over the jury and the result reached was inconsistent with substantial justice") (citation omitted). Harris told a police officer that he had

stored guns in his girlfriend's bedroom that very morning. And when the officers could not find the firearms, Harris personally directed the officers to the storage container in Andrews's bedroom where the two guns were found. Harris stored the guns in Andrews's bedroom without her knowledge or the knowledge of Andrews's grandmother, which further reflects that he intended to exercise control over the two guns. Harris also admitted to the police officers that the guns were operable and that he had shot them on New Year's Eve. All of this uncontested evidence clearly reflected that Harris had the power and intention to exercise dominion and control over the two guns. Therefore, any potential error in the admission of Andrews's statements regarding gun possession does not warrant reversal. *See United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995) (affirming 18 U.S.C. § 922(g)(1) conviction where firearms stored at girlfriend's residence).

C.  No Error in Admitting Harris's Post-Arrest Statements

Finally, Harris challenges the admission of Sergeant Eric Olson's testimony that recounted Harris's post-arrest statements. He argues that Sergeant Olson's testimony suggested Harris was involved with a gang and that the prejudicial effect of the testimony substantially outweighed its probative value so that the testimony should have been excluded under Federal Rule of Evidence 403. We review the district court's admission of this testimony over Harris's objection for an abuse of discretion. *See Moore*, 531 F.3d at 499.

Sergeant Olson testified that after Harris had received *Miranda* warnings, Olson "conducted a general questioning regarding gang and drug activity and asked Mr. Harris if—he could provide any information." Sergeant Olson said that Harris agreed to do so, and that Harris directed the officers to an address where he said there were guns in a bedroom. Sergeant Olson continued:

> A: In talking to Mr. Harris at the station, I asked Mr. Harris, again, about gang information in the Englewood community.
>
> Q: And what did he say?
>
> A: Mr. Harris related to me, in essence, that he was having a dispute with a group of individuals from approximately 59th and Sangamon, I believe it was; that that was why he had the firearms, but, he moved out of the Englewood community because, as he quoted, it was too hot and there were too many police out there.

Evidence of gang membership can be inflammatory, with the danger being that it leads the jury to "attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted." *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004) (quoting *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996)). For that reason, we have asked district courts to consider carefully whether to admit evidence of gang membership and gang activity in criminal prosecutions. *See Montgomery*, 390

F.3d at 1018; *Irvin*, 87 F.3d at 864; *United States v. Butler*, 71 F.3d 243, 251 (7th Cir. 1995). The record reflects that the district court did just that here. It discussed the issue with both parties during a pre-trial hearing and then took several steps in an attempt to reduce the prejudicial impact of Harris's admitted gang membership. Pursuant to the judge's directions, Sergeant Olson's testimony at trial did not recount the much stronger statement Harris had made at the station, which was that he was "a GD [Gangster Disciple] for life and we're at war with the GD Renegades on 59th and Sangamon. That's why I got [the] guns but it's too hot in Englewood so I moved [the] guns out. There [are] too many police out there." At trial, Sergeant Olson did not directly state that Harris was a member of a gang. The judge also directed that the conversation at trial between Sergeant Olson and Harris be called "the interview" instead of the "gang gun interview," and the judge allowed the government to lead its witness during the testimony that might mention gangs. The result was testimony at trial that was far less inflammatory than it would have been had Harris's own words been used.

Of course, "toning down" testimony is not always enough. In *Irvin*, 87 F.3d at 862, for example, we held that although the district court did not allow the jury to hear all of the government's proposed evidence that connected the defendant to a gang, it did not go far enough. In that case, we concluded that evidence that a defendant was a member of a motorcycle gang should not have been admitted to show that he was more likely to have distributed drugs, as there was a

missing link between the gang and the criminal activity at issue. *Irvin*, 87 F.3d at 864 & n.4. Here, in contrast, Sergeant Olson's testimony reflected a direct link to the charged crime. The testimony was evidence of Harris's possession of the guns named in the indictment, as Harris acknowledged to Sergeant Olson that he "had the firearms." The testimony also reflected Harris's motive for possessing these particular firearms. *See Montgomery*, 390 F.3d at 1018 (finding evidence of a defendant's gang membership admissible to show his motive for carrying a gun when the defendant stated he had brought a gun to a festival in light of the possibility of confrontation with a rival gang); *see also United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995); *Butler*, 71 F.3d at 251; *United States v. Sargent*, 98 F.3d 325, 328-29 (7th Cir. 1996); *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990). As a result, the district court did not abuse its discretion when it allowed Sergeant Olson's testimony.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.