

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-16-2005

# USA v. Gonzalez

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1674

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Gonzalez" (2005). *2005 Decisions*. Paper 226.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/226

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL
<u>AMENDED</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 03-1674

————

UNITED STATES OF AMERICA

v.

ANGEL GONZALEZ,
<u>Appellant</u>

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 02-cr-00534)
District Judge:  Hon. Michael M. Baylson

————

Argued May 3, 2004

Before:  SLOVITER, FUENTES and BECKER, <u>Circuit</u> <u>Judges</u>

(Filed: May 25, 2004)
(AMENDED OPINION Filed:  November 16, 2005)

————

David L. McColgin    (Argued)
Robert Epstein
Dina Chavar
Maureen Kearney Rowley
Defender Association of Philadelphia
Federal Court Division
Philadelphia, PA l9l06

        Attorneys for Appellant

Patrick L. Meehan
    United States Attorney
Laurie Magid
    Deputy United States Attorney Policy and Appeals
Robert A. Zauzmer
    Assistant United States Attorney
Roberta Benjamin    (Argued)
    Assistant United States Attorney
Office of United States Attorney
Philadelphia, PA l9l06

    Attorneys for Appellee

## AMENDED OPINION OF THE COURT

SLOVITER, Circuit Judge.

Angel Gonzalez appeals from the District Court's judgment and conviction order. Gonzalez was sentenced to an imprisonment term of 120 months following his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Gonzalez argues that he was denied a fair trial because the judge permitted the Government to suggest to the jury, through the cross-examination of a defense witness, that Gonzalez was part of a gang.

**I.**

Background Facts

On October 15, 2001, Officers John Krivulka and Joseph Leighthardt were on duty in Philadelphia's 26th Police District when they received a call of a burglary in progress at 218 West Sergeant Street. Upon arriving at the scene in their marked patrol car,

2

Officer Krivulka observed Gonzalez exiting the driver's side of a car that was parked partially on the street and partially on the sidewalk. Gonzalez then walked over to Miguel Molina, who was seated on the front steps of 218 West Sergeant Street.

Officer Krivulka parked the patrol car and walked over to Gonzalez and Molina. As Officer Krivulka passed the car from which Gonzalez exited, he looked inside and saw a handgun on the front seat. Officer Leighthardt was already speaking with both Molina and Gonzalez when Officer Krivulka came up behind him and told him there was a weapon in the car from which Gonzalez had exited. Officer Leighthardt then told Gonzalez to turn around and put his hands behind his back. Gonzalez shoved Officer Leighthardt and fled, but was apprehended after a brief foot chase.

The handgun found in the car was a loaded Lorcin model with an obliterated serial number. The parties stipulated at trial that Gonzalez had previously been convicted of a crime punishable by imprisonment of a term exceeding one year. The jury subsequently found Gonzalez guilty of one count of possession of a firearm by a convicted felon.

## Trial

Gonzalez's appeal is limited to his challenge to the questions that the Assistant U.S. Attorney posed to Molina, who was a defense witness at Gonzalez's trial. The District Court held a hearing outside the presence of the jury to determine the permissible scope of Molina's testimony. The court stated that absent an offer of proof, it could not say in the abstract whether gang affiliation questions would be relevant on cross-

examination. The Government sought to question Molina about his prior convictions and his numerous tattoos, particularly the one on his arm reading "fuck the law," in order to establish Molina's general attitude toward the law, his lack of credibility, and the possibility that the tattoos reflected gang membership. It reasoned that if Molina and Gonzalez were members of the same gang, it might suggest Molina had motive to skew his testimony so as to materially benefit Gonzalez's defense.

During cross-examination, the prosecution asked Molina to describe his derogatory tattoo to the jury. It then asked Molina if any of his tattoos associated him with a particular gang, if he was a member of a gang, and if he knew any of the persons the prosecutor had named. As the prosecutor explained to the court, she suspected those persons were members of a gang. When Molina answered in the negative, the prosecutor moved on.

The objection by Gonzalez to this line of questioning was overruled. Out of the presence of the jury the District Court ruled that based on the offer of proof, the Government was entitled to "ask about the relationship between the defendant and the witness, if any," App. at 104a, but stopped short of allowing a separate line of questions about gangs or stopping the trial for a physical examination of tattoos. The court stated:

> We're not going to get into a separate trajectory about gangs, who belongs to what gangs and things like that. And I wouldn't be inclined to interrupt the trial for physical examinations of anybody, but I think Mr. Molina can be asked about tattoos that are on his body. . . . That would tend to show his motive or his bias, I mean that's why they're relevant. I mean if he has a tattoo on his body which is derogatory to the law, I think that's relevant to

4

come out on cross-examination. . . . It goes to his motive and bias. I think it's proper. But that to [me] sounds like that will be the extent of it.

App. at 103a-04a.

## II.

Discussion

We review district court decisions regarding the admissibility of evidence for abuse of discretion. United States v. Saada, 212 F.3d 210, 220 (3d Cir. 2000). "[T]he proper bounds of cross-examination are within the sound discretion of the trial court and, absent a showing of abuse, the exercise of that discretion will not be reversed by an appellate court." United States v. Stevens, 935 F.2d 1380, 1393 n.17 (3d Cir. 1991) (quoting Lewis v. Rego Co., 757 F.2d 66, 73 (3d Cir. 1985)).

The United States Supreme Court has stated that generally, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. 45, 52 (1984). Here, the District Court held that the evidence elicited could go to establishing motive and bias of the defense witness.

Gonzalez argues that the District Court improperly allowed the Government to pose gang affiliation questions to Molina because the Government had failed to lay a proper foundation for those questions. He urges this court to adopt the holding of the Court of Appeals for the Tenth Circuit that "[a]lthough Abel permits the introduction of

5

evidence of gang membership to show bias, the government must first lay a foundation showing that the defendant and the witness to be impeached belong to the same gang." United States v. Keys, 899 F.2d 983, 986 (10th Cir. 1990). The Government concedes that this rule of law is correct, but argues that "there is no bar to laying that foundation through the defense witness' testimony" and that because "the prosecutor tried but failed to lay a foundation [through testimony], . . . no evidence of gang membership was admitted." Appellee's Br. at 26-27.

While it may have been more prudent for the District Court to require the Government to proffer evidence in its possession linking Molina and Gonzalez to the same gang before it questioned Molina, the Government did have a good faith basis, founded on information from a police detective, for seeking to establish a gang-related connection between Molina and Gonzalez. Furthermore, the prosecutor did not stray outside the discretionary boundaries set forth by the District Court. Under these circumstances, we cannot hold that the court abused its discretion in allowing the Government to question Molina about his relationship with Gonzalez in an effort to lay a foundation for further gang affiliation questions.

Gonzalez next argues that the Government committed prosecutorial misconduct by suggesting and insinuating that Molina and Gonzalez were gang members, thereby causing prejudice. We ordinarily review for abuse of discretion the District Court's decisions on claims of prosecutorial misconduct. United States v. Molina-Guevara, 96

6

F.3d 698, 703 (3d Cir. 1996). The Government argues, however, that because Gonzalez failed to mention prosecutorial misconduct at trial or in his Motion for a New Trial, Gonzalez failed to preserve this issue. The proper standard of review should therefore be plain error. "Under plain error review, [the court] may grant relief if (1) the District Court committed an 'error,' (2) it was 'plain,' and (3) it affected 'substantial rights' of the defendant." United States v. Plotts, 359 F.3d 247, 249 (3d Cir. 2004) (internal citation omitted).

Gonzalez has not shown plain error. The Government did not exceed the bounds of permissible cross-examination established by the District Court in the interest of giving the Government the opportunity to establish bias for the purpose of impeaching Molina. But even under the abuse of discretion standard, Molina's claim fails. The questions of gang affiliation were limited in scope and amounted to a small piece of the total aggregate information regarding Molina's credibility. The prosecution established that Molina (1) lied to police during the initial field investigation at the time Gonzalez was arrested by giving an alias; (2) had multiple prior convictions including conspiracy to distribute heroine and crack, manufacturing and possessing a controlled substance, making terroristic threats and harassment, resisting arrest, and many other charges and arrests; (3) admitted to violating his probation "a number of times"; (4) was then serving four to ten years for conspiracy to distribute drugs; and (5) had a tattoo on his arm reading "fuck the law."

The Government approached the topic of gang affiliation on three separate occasions in the presence of the jury. The first instance occurred when Molina was asked "do you know anyone, the Carbonellas, Carbonells. . . . Carbonellis?" App. at 128a. The word "gang" was never used. The second instance occurred when Molina was asked "are [any of your] tattoos associated with a particular gang that you're a member of? . . . You're not a member of a gang, you're not involved with any gangs?" App. at 129a-130a. The third and final instance occurred when Molina was asked, "Do you know anyone by the name of Raffi . . . . Freddie ? . . . June Bug ? . . . [or] Mike?" App. at 132a-133a. After responding "no" to these questions, Molina was asked if he knew "anybody associated with those gangs?" App. at 133a.

There was no abuse of discretion in the District Court's ruling that Gonzalez had not shown prosecutorial misconduct. Gonzalez argues that under the rules regarding prosecutorial misconduct established in Berger v. United States, 295 U.S. 78 (1935), a prosecutor may not make improper insinuations or suggestions to the jury through cross-examination of a witness. However, the Berger Court noted that its holding was tied closely to the facts present in that case, stating that:

> If the case against Berger had been strong, or, as some courts have said, the evidence of his guilt "overwhelming," a different conclusion might have been reached. Moreover, we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential.

8

Id. at 89 (internal citations omitted).

In contrast, in this case the Government merely asked on three separate occasions if Molina knew people the prosecutor believed to be members of a gang or if his tattoos affiliated him with a gang. These questions did not convey to the jury the prosecutor's personal knowledge that Molina was a gang member. Moreover, because there was very little follow-up after Molina provided negative answers, the prosecutor did not insinuate that Molina was lying.

In light of the large amount of non-gang related information elicited about Molina's propensity for untruthfulness and his disregard for the law, we conclude that there was ample other evidence to lead the jury to reach the same adverse credibility finding. The Government did not create a clear and substantial prejudice resulting in a manifestly unfair trial, and we reject Gonzalez's claim of prosecutorial misconduct.

Gonzalez's final argument is that the District Court's alleged error and the prosecutor's alleged misconduct were prejudicial and harmful to him. In United States v. Cross, 308 F.3d 308 (3d Cir. 2002), we held that improper admission of evidence is non-constitutional in nature and that the non-constitutional harmless error standard applies to such situations. Id. at 326. We need not decide whether the alleged error in this case was constitutional or non-constitutional because we have not found error. Whether we apply the constitutional harmless error doctrine that requires a showing that the error was "harmless beyond a reasonable doubt" or the non-constitutional harmless error doctrine

9

that requires a showing that it is "highly probable that the error did not contribute to the judgment," id., we reject Gonzalez's argument that the combination of the prosecutor's misconduct and the court's stamp of approval by overruling objections to gang affiliation questions resulted in the denial of a fair trial. As we concluded above, the prosecution did not commit misconduct and the court did not commit error by allowing preliminary "relationship" and "gang affiliation" questions in an effort to lay a foundation for the admission of gang membership evidence. Moreover, even if we were to find non-constitutional error, it would have been harmless. The overwhelming weight of additional bad character evidence concerning Molina, specifically his lying to police, his use of an alias, his criminal history, his numerous probation violations, and his derogatory tattoo, would have been sufficient to lead the jury to conclude that Molina was not credible. Thus, even if there were error, the error did not contribute to the judgment and was therefore harmless.

## CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment of conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). We shall vacate the sentence and remand for resentencing in accordance with our procedures set forth in United States v. Davis, 407 F.3d 162 (3d Cir. 2005).[1]

---

[1]On July 8, 2004, appellant filed a motion raising a challenge to the sentence imposed in light of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004). The panel held this motion c.a.v. pending consideration of United States v. Booker, 125

BECKER, *Circuit Judge, dissenting.*

In *United States v. Abel*, 469 U.S. 45, 54-56 (1984), the Supreme Court established that impeachment of a witness through gang affiliation may be attempted only if that gang affiliation is sufficiently probative of the witness's possible bias toward the defendant. As *Abel* clearly implies, gang-related evidence is insidious, and the dangers of admitting it are great. As Judge Flaum wrote in *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996):

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted.[2]

These precepts are as true today as they were then. While the majority does not deny their validity, it, in effect, deflects them by downplaying the extent of the imputation of gang activity to Molina and its impact on Gonzalez's case. Its efforts are flawed.

The majority accurately describes the testimony of Officers Krivulka and Leighthardt, but it neglects to explain why Molina's testimony was crucial: The case against Gonzalez came down to a credibility test between the officers' testimony and that of the witnesses put on by Gonzalez. Molina's testimony was crucial because (1) he was

S.Ct. 738 (2005). By separate order issued this date, the panel has granted appellant's motion in accordance with this Court's decision in United States v. Davis, 407 F.3d 162 (3d Cir. 2005).

[2] *See also United States v. Sargent*, 98 F.3d 325, 328 (7th Cir. 1996) (noting "the insidious quality of such evidence and the damage it can do").

11

present that night and observed the events testified to by the officers; (2) he claimed that Gonzalez was not in or near the gold car that was parked in front of 218 West Sergeant Street (the car in which the gun was found); and (3) he states that Gonzalez arrived at the scene in a white car. Molina's testimony was corroborated in significant part by that of Margaret Saunders, the neighbor who initially called in the disturbance, who was also present. In the absence of any physical evidence tying Gonzalez to the gun, the eyewitness testimony was critical. Since it was conflicting, the undermining of Molina's testimony by insinuating his membership in a gang is center-stage in this appeal.

To be sure, as the majority explains, Molina was otherwise impeached. But the clear and repeated intimations that Molina was associated with a gang were inappropriate and may well have tipped the balance in the prosecution's favor. The insinuations and their frequent repetition are demonstrated by the excerpts from the transcript, attached as an appendix to this opinion. In one particularly egregious line of questioning, the prosecutor names certain people and asks Molina if he knows any of them. When Molina answers in the negative, she nevertheless assumes not only their very existence, but also their membership in a gang:

> Q. Do you know anyone by the name of Raffi? Is that a no?
> A. No.
> Q. Freddie? June Bug? That's a no?
> A. No.
> Q. And Mike?
> A. No.
> Q. Well, I guess you could know a Mike, but any of those people live in the area of 8 and Ontario, or hanging out there? Doesn't ring a bell?

12

A. No.

Q. You don't know that? You don't know anybody associated with those gangs? (App. 132a-133a). When Gonzalez's counsel objected, the prosecutor withdrew the question and stated within hearing of the jury: "[W]e'll just indicate that he doesn't know the people by those names." (App. 133a).

Compounding the problem is that the prosecution never demonstrated a foundation for inquiring into Molina's gang activity (which Molina denied). The prosecutor represented to the Court that one Detective Brown had given her information that led her to believe that Molina and Gonzalez were members of the same gang (hence Molina's putative bias), but she never made a proffer supplying the basis for her claimed good faith belief. Neither did the District Court ask her to supply one. The District Court was understandably wary of pursuing this line of inquiry too far and ultimately cut it off, but not before the damage had been done.

In my view, in the absence of much stronger foundation, the jury should not have been permitted to hear the gang insinuations; rather they should have been "cut off at the pass." Neither was the error harmless, notwithstanding the other assaults on Molina's credibility, for the harmless error standard applicable to the trial error claim is high probability that the error did not contribute to the judgment. *See United States v. Gambone*, 314 F.3d 163, 177-78 (3d Cir. 2003). "'High probability requires that the court possess a sure conviction that the error did not prejudice the defendant.'" *Id.* (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (citations

13

omitted)).  Given that I do not possess that conviction, I respectfully dissent, and would reverse and remand for a new trial.

APPENDIX

Q.  Do you know the Carbonells?

A.  Excuse me?

Q.  Do you know the Carbonells?

A.  Carbonells?  No.

Q.  Carbonellis?

A.  Uh-uhm.

Q.  Is that a no?

A.  Yeah, that's a no, I don't know them.

Q.  I'd like you to tell us, on your arms you have a number of tattoos, is that not correct?

A.  Yeah, yeah.

Q.  And –

    MR.  COOPER: Objection, Your Honor.

    THE COURT: Overruled.

Q.  In particular, you have one tattoo on your forearm, have you not?

A.  Yeah.

Q.  Can you tell us what it says, the one that has some language on it?

A.  What it says?

Q.  Yes.

A. Well, it says – you want me to say the whole word, the whole thing?

Q. You have it on your arm.

A. It says fuck the law.

Q. And you have that tattooed on your arm?

A. Yeah.

Q. And you have a number of other tattoos on your body, is that correct?

A. Yeah.

Q. And are those tattoos associated with a particular gang that you're a member of?

A. No.

Q. You're not a member of a gang, you're not involved with any gangs?

A. No.

Q. And that statement's as true as everything else you said here today, is that right?

A. Yeah.

\* \* \*

Q. Do you know anyone by the name of Raffi? Is that a no?

A. No.

Q. Freddie? June Bug? That's a no?

A. No.

Q. And Mike?

A. No.

16

Q.     Well, I guess you could know a Mike, but any of those people live in the area of 8 and Ontario, or hanging out there?  Doesn't ring a bell?

A.     No.

Q.     You don't know that?  You don't know anybody associated with those gangs?

MR. COOPER:     Objection, Your Honor.  There's been no foundation laid that there is a gang or anyone is known in a gang or anything like that.  It's assuming a fact that's not in evidence.

THE COURT:     You want to rephrase the last question.

MS. BENJAMIN:     I guess I'll leave it as it was before and withdraw the last question and we'll just indicate that he doesn't know the people by those names.