

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2006

# Richards v. Tennis

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2725

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Richards v. Tennis" (2006). *2006 Decisions*. Paper 423.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/423

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2725

MICHAEL RICHARDS,
                                    Appellant

v.

FRANK TENNIS, SUPERINTENDENT, SCI BELLEFONTE;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-1642
(Honorable Michael M. Baylson)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 11, 2006
Before: SCIRICA, *Chief Judge*, SLOVITER and BARRY, *Circuit Judges*

(Filed: September 25, 2006)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

        Michael Richards appeals from an order denying his 28 U.S.C. § 2254 habeas

petition. We have jurisdiction under 28 U.S.C. § 2253, and will affirm.

I.

On May 30, 2001, Richards was convicted in state court after a jury trial of first degree murder, robbery, and witness intimidation. Richards ran a drug house in Philadelphia, at the home of John Agostini, and Richards "employed" Chad Ferdinand and Raymond Fredericks to run the drug operation. On July 14, 1994, Ferdinand left the drug house with drugs and the money he had collected that evening. He returned to the drug house at 3:00 a.m., informing Fredericks that the women he had been with that night took the money and the drugs. The next day, Richards confronted Ferdinand and Fredericks. At one point, Richards struck Fredericks across the chest with a gun, and continued arguing with Ferdinand. At a later point, Richards pulled his gun on Ferdinand and shot and killed him.

On the first degree murder charge, the primary issue at trial was whether Richards specifically intended to kill Ferdinand. Fredericks testified at trial that the shooting occurred accidentally when Richards attempted to strike Ferdinand over the head with the butt of his gun. Fredericks testified the gun went off when Ferdinand put his hands up to block the imminent physical blow. The owner of the house, Agostini, testified he saw Richards pull out the gun and move to hit Ferdinand over the head. But Agostini turned his head to avoid watching the impact and was not watching when the gun went off. A third witness—an inmate who was in jail with Richards at the time of his trial—testified Richards told him the gun "accidentally" went off.

Edwin Lieberman, M.D., Assistant Medical Examiner, testified at trial, explaining that Ferdinand had blunt force injuries to his shoulder and forehead consistent with the

2

butt end of a gun, and a gunshot wound entering at the back of his head with an exit wound over the left temple. Significantly, Dr. Lieberman testified the gunshot wound could not have occurred while Richards was beating the victim with the gun because the bullet wound was on the side of the victim's head opposite the blunt force injuries.

> Being struck on the top of the shoulder with the butt of a gun, if the person is standing in front holding the gun, holding it by the muzzle so that the butt is free or holding it by the butt of the gun and striking downward, the muzzle would be pointing forward or backward, not at the back of the head in this direction as I've outlined. Nor would a muzzle ever come close to the back of the head being struck in the front with the butt of a gun. Remember, a gun looks like sort of an L-shape or a 7. So if you're struck with the short side, the butt, over the forehead this way, the muzzle would be pointing down or pointing up or pointing to the side, but it can't curve around to the back of the head to cause the wound.

As a result, the location of the gunshot wound is not consistent with an accidental discharge during the infliction of blunt force wounds.

Richards appealed his conviction and sentence to the Pennsylvania Superior Court, alleging, among other things, ineffective assistance of counsel. At trial, there was evidence that Richards was born in Jamaica, ran his drug house with another group of Jamaican men in the neighborhood, and employed Jamaicans to run his drug business. During opening and closing arguments, the prosecutor referred to Richards as a "Jamaican drug dealer" and noted some witnesses knew Richards as either "Mikey Lala" or "Jamaica Mike." The prosecutor also stated the case was about a "murder involving drugs," which was motivated by anger over Richards's loss of money as a direct consequence of the victim's actions. On appeal, Richards argued his counsel was

3

ineffective for failing to request a jury instruction limiting the use of references to his nationality and references to his drug activities to prove his tendency toward violence.

The Superior Court affirmed Richards's conviction, holding, "even if counsel was ineffective, appellant suffered no prejudice." *Commonwealth v. Richards*, 828 A.2d 402 (Pa. Super. Ct. 2003). According to the court, Richards's involvement in the sale of drugs was "overwhelmingly established by the properly admitted evidence, so that the references to appellant were harmless error." *Id.* The Pennsylvania Supreme Court denied review. *Commonwealth v. Richards*, 841 A.2d 530 (Pa. 2003).

Richards filed a timely petition under 28 U.S.C. § 2254 in federal court, arguing ineffective assistance of counsel based on his trial counsel's failure to request a limiting instruction on the "Jamaican drug dealer" references. He asserts that the jury might have convicted him of first degree murder, instead of third degree murder, based solely on Richards's status as a "Jamaican" and a "drug dealer" and not because the jury believed Richards intended to kill Ferdinand. The Magistrate Judge recommended denying the petition, agreeing with the state court that "in light of the abundance of evidence against Richards, the references to him as a drug dealer did not prejudice the defense." The Magistrate Judge also concluded the prosecutor's references to Richards's ancestry and drug activities were not prejudicial because these facts were overwhelmingly established at trial. Richards filed objections, arguing the Magistrate Judge failed to recognize the prejudicial effect of the references to his Jamaican ancestry. The District Court adopted the Magistrate Judge's recommendations and denied Richards's § 2254 petition.

4

*Richards v. Tennis*, No. 04-1642, 2005 WL 991264, at *2 (E.D. Pa. April 24, 2005). The court held the references to Richards's ancestry were not prejudicial in part because the government did not attempt to draw direct links between his ancestry and the crime for which he was charged. *Id.*

We granted a certificate of appealability on the following issue: "whether the District Court erred by denying habeas corpus relief as to Appellant's claim that counsel was ineffective in failing to request an instruction that the jury should not consider Richards' nationality or activity as a drug dealer for a propensity to commit violent crime." Our review is plenary. *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001). We may grant relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.

To establish a claim of ineffective assistance of counsel under *Strickland*, Richards must demonstrate his attorney's performance was deficient and that he was prejudiced by this deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). That is, he must prove counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

5

To succeed on an ineffective assistance of counsel claim, petitioners must show counsel's performance was deficient based on the "facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Petitioners may only overcome the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, by "showing that no sound strategy posited by the [government] could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). The state court did not address the performance prong of *Strickland*, noting "even if counsel was ineffective, appellant suffered no prejudice and thus is not entitled to any relief." There was no evidentiary hearing on the federal habeas petition. Even though a request by defense counsel for a limiting instruction may have highlighted for the jury an explicit connection between a propensity towards violence and the prosecution's characterization of Richards as a Jamaican drug dealer, *see Buehl v. Vaughn*, 166 F.3d 163, 176 (3d Cir. 1999), there is nothing in the record to demonstrate that trial counsel conceived this strategy. Therefore, we turn to the prejudice analysis under *Strickland*.

The state court found the references to Richards as a "Jamaican drug dealer" were not prejudicial. This decision was not unreasonable. The evidence at trial overwhelmingly established Richards's guilt. The evidence of Richards's drug activities and involvement in the local Jamaican drug gang was properly admitted, both to demonstrate motive and to establish the circumstances surrounding the murder. Richards does not dispute his involvement. Several witnesses saw Richards argue with the victim

6

over missing drug money and other drug-related issues and point a gun at the victim shortly before the fatal shot rang out.  From this testimony, the jury would have reached the obvious conclusion that defendant was a drug dealer, negating any possible prejudice caused by the prosecutor's characterization of him as one. The Pennsylvania Supreme Court reached a similar conclusion in *Rollins*, holding the absence of a limiting instruction for the admission of one witness's drug related testimony did not prejudice the defendant where the record was replete with evidence that the witnesses and the defendant were "involved in the sale and/or use of drugs."  *Commonwealth v. Rollins*, 580 A.2d 744, 748 (Pa. 1990).[1]  Furthermore, Richards's claim that the gun accidentally went off is contradicted by the medical examiner's testimony that Ferdinand could not have been shot while Richards struck him with his gun.[2]  In light of this evidence, the state court reasonably found Richards was not prejudiced by his counsel's error, if any.

---

[1] Richards contends the state court's reliance on *Rollins* was in error because admission of his drug activities to establish motive does not render the evidence harmless in his murder trial.  We agree the basis for the state court's decision is unclear, considering Richards asserts entitlement to limiting instructions for both the evidence of his nationality and drug activities, as well as to any references thereto.  But we need not decide this issue because the evidence at Richards's trial strongly supported his conviction for first degree murder.

[2] Although the medical examiner stated the shooting could have occurred while Richards struck the victim if the victim turned his head away, possibly to flee, there was no evidence at trial to support this theory.  Fredericks testified only that Ferdinand put his hands up to protect his face, and then the shot went off.  We apply a deferential standard of review when evaluating the legal sufficiency of evidence used to support a jury verdict. *See, e.g.*, *United States v. Gambone*, 314 F.3d 163, 169–70 (3d Cir. 2003). Here, we find sufficient evidence upon which a reasonable jury could have rested its verdict.

Richards cites several cases in support of his argument that references to his nationality infected his trial, but none are on point. In some, the evidence of the defendant's guilt was not as strong as in this case. *See, e.g.*, *United States v. Rodriguez Cortes*, 949 F.2d 532, 543 (1st Cir. 1991) (noting the case was "very close"); *United States v. Doe*, 903 F.2d 16, 28 (D.C. Cir. 1990) (finding prejudice from comments about defendant's nationality where the evidence was "hardly overwhelming"). In others, the comments were irrelevant. *See, e.g.*, *United States v. Cabrera*, 222 F.3d 590, 596 (9th Cir. 2000) (noting references to the defendants' ancestry were "improper and inadmissible" under the Federal Rules of Evidence). In most of these cases, the prosecution attorneys attempted to draw direct links between the defendants' nationalities and the charged crimes. *See, e.g., Doe*, 903 F.2d at 20 (holding comments which "focused on monopolization of the local drug market by dealers tracing their ancestry to Jamaica, and strongly suggested that appellants were guilty because two of them are Jamaican" were prejudicial). None of these facts are present here.

## III.

For the foregoing reasons, we will affirm the District Court's judgment, denying Richards's § 2254 petition.

8