**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1239

_____

UNITED STATES OF AMERICA

v.

VINCENT CARTER,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-07-cr-00739-001
District Judge: The Honorable Cynthia M. Rufe

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 27, 2011

Before: McKEE, *Chief Judge*, and SMITH, *Circuit Judge*,
and STEARNS, *District Judge**

(Filed: February 1, 2011)

_____

OPINION

_____

STEARNS, *District Judge.*

Vincent Carter appeals a decision of the District Court to allow the introduction at his

_____

* The Honorable Richard G. Stearns, United States District Judge for the United States
District Court of Massachusetts, sitting by designation.

trial of aspects of his membership in the Bloods, a violent street gang. He also appeals the denial of a motion for a new trial based on alleged juror misconduct. On June 29, 2009, Carter was convicted by a jury in the Eastern District of Pennsylvania of possession with intent to distribute cocaine base, possession of marijuana, and being a felon in possession of a firearm.[2] On September 11, 2009, after denying the motion for a new trial, the District Court (Rufe, J.) sentenced Carter to ninety-six months imprisonment. This timely appeal followed.

On the evening of September 2, 2007, Philadelphia police officers Tyreek Cunningham and Scott Lawrence got out of their patrol car and began walking towards a group of young men loitering on the steps of 5238 Catherine Street and in an adjoining alleyway. Two men were seated on the steps. A third man exited from the alleyway, looked in the direction of the officers, and turned his back. Two other men left the alleyway and joined the group congregating on the steps. Two men and a woman remained in the alley. Officer Cunningham observed the woman stoop down and lift up a pile of carpets, while one of the men, later identified by Cunningham as Carter, shoved a small black object underneath.

After requesting backup and securing the scene, Officer Lawrence retrieved a black book bag from under the pile of carpets. He held the bag up to the seven or eight persons now assembled on the steps and asked who owned it. When no one responded, he opened

---

[2] Carter was acquitted of possessing the firearm "in furtherance of" a drug trafficking crime.

the bag and found: (1) a Bloods membership roster with Carter's name listed at the top as the "OYG" (Original Young Gangster), and also by the aliases "Bla2kRum" and "Doe Boy Ru"; (2) a notebook listing "OYG, Bla2kRum," with an "address" of "21 West Gangsta Avenue," and the school of "Hard Kno2k life"; (3) a rock of crack cocaine; (4) 20 packets of marijuana; (5) a loaded Keltec 9mm handgun; and (6) four copies of a manual describing Bloods rituals and the echelons of the Bloods hierarchy. The manual and the gang roster both identified Carter with the statement "pa oyg is blak rum doe boy ru."

At trial, the government offered the contents of the bag, together with the testimony of Corporal Edwin Santana, an expert on the Bloods and other street gangs.[3] Santana testified that the documents found in the bag identified Carter by his birth and street names. Santana opined that as the "OYG," Carter was the highest-ranking member of the Bloods in the gang's Philadelphia territory. Although Santana did not offer a direct opinion as to the ownership of the book bag, he testified that an OYG would likely possess multiple copies of the gang manual to use in educating new initiates about gang customs and practices.

After deliberations began, the jury foreperson sent a note to Judge Rufe stating that Juror #7 had mentioned asking her daughter a question about the case. The note inquired whether Juror #7's conduct amounted to "outside research," an undertaking the Court had strictly forbidden. Juror #7 (out of the presence of the other jurors) explained to Judge Rufe that she had been shopping with her teenage daughter when, in an effort to make

---

[3] After conducting a voir dire, defense counsel did not object to Santana's qualification as an expert.

conversation, she casually asked whether 2 grams of crack is "a lot." Juror #7 added, "I wasn't asking for her help, just like talking in just general conversation." Tr. of June 29, 2009, at 16. Juror #7 further stated that her daughter had responded with a shrug and an inaudible comment that she could not really interpret. When the Court convened the entire jury to discuss the note, Juror #1 stated that Juror #7 had told other jurors that her daughter had said that two grams is in fact "a lot" of crack.

After weighing concerns about Juror #7's forthrightness, Judge Rufe decided that the single question and answer did not amount to prejudicial "outside research." Addressing the jury, she instructed, "No, it's not research that you can rely on, it's not research that's official, and it would not be research under any guise . . . in a court of law. . . . If [the daughter's answer] is influencing any of you, I would need to know about that now." Tr. of June 29, 2009, at 26. When no juror reported having been influenced by the remark, Judge Rufe asked them to continue their deliberations, but stressed again that "anything you heard outside the courtroom is not permitted, and not permitted to be considered." *Id*. After rejecting the government's suggestion that she dismiss Juror #7 for cause and allow deliberations to continue with a jury of eleven, Judge Rufe denied Carter's motion for a mistrial. Two hours later, the jury returned its guilty verdict.

1. The Rule 403 Motion in Limine

Prior to trial, Carter filed a motion in limine to preclude the government from introducing the gang membership roster, the notebook, and the gang manuals that were found in the book bag. He also objected to the introduction of the drugs and the gun, arguing that

4

the evidence was insufficient to establish that the bag was his. The District Court denied the motion in limine, but barred the government from referring to the Bloods by name. Judge Rufe also gave a limiting instruction that had been jointly agreed to by the parties, explaining to the jury the proper uses they could make of the gang-affiliation evidence and the expert testimony.

We review a District Court's decision regarding the admissibility of evidence for an abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000). We apply the same standard in reviewing a District Court's determination that the risk of unfair prejudice does not substantially outweigh the probative value of otherwise admissible evidence. *See United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001).

Carter first argues that the District Court abused its discretion in admitting the gang-affiliation evidence because of its irrelevance to any issue at trial. The Government insists that the gang materials were properly admitted to rebut Carter's disclaimer of ownership of the book bag and to corroborate Officer Cunningham's testimony that he had observed Carter thrusting the bag under the stack of carpets. We agree. The disputed evidence was probative on the issues of ownership and identity, both of which were essential elements of the Government's case.

Carter's second argument is that the prejudicial impact of the gang-affiliation evidence substantially outweighed its probative value. Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

5

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have joined other Circuits in holding that Rule 403 creates a presumption of admissibility. *See United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 664-65 (3d Cir. 2000) (en banc).

> Evidence cannot be excluded under Rule 403 merely because its unfairly prejudicial effect is greater than its probative value. Rather, evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value. . . . As one example, when evidence is highly probative, even a large risk of unfair prejudice may be tolerable.

*United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002). So it is here.

We take further comfort in the fact that the District Court took pains to minimize any excessively prejudicial effect by giving a forceful limiting instruction with respect to the uses that the jurors could make of the gang-related evidence and Corporal Santana's explanatory testimony.[4] While the potentially volatile issue of gang affiliation was handled impeccably

---

[4] Judge Rufe instructed in relevant part:

> This Court admitted this testimony and instructed you to only consider it on a limited purpose, as it relates to the allegations here that Mr. Carter possessed the firearm and narcotics. You have to determine those ultimate issues, whether he did possess the firearm and the narcotics.
>
> The evidence that was presented related to gang membership or leadership or anything else related to it, can only be considered by you for that reason and no other.
> . . .
> The element of information and testimony about the gang or the gangs was only admitted for one purpose only, and that's to relate to you the Government's position that the possession of the firearm and the drugs are related to Mr. Carter. So, keep that in mind.

6

by the District Court,[5] we emphasize that gang-affiliation evidence should be admitted only when it is solidly tied to some legitimate purpose other than a showing of a propensity to criminal conduct such as one or more of those specified in Rule 404(b): motive, identity, opportunity, and the like.

## 2. Juror Misconduct

Carter next claims that the District Court erred in denying him a new trial because of Juror #7's alleged misconduct. Fed. R. Crim. P. 33(a) provides for a new trial "if the interest of justice so requires." Recognizing that the trial judge is in the best position to evaluate allegations of juror misconduct, we review a District Court's investigation of the allegations and its decision to deny a motion for a mistrial for abuse of discretion. *United States v. Resko*, 3 F.3d 684, 688, 690 (3d Cir. 1993).

Where juror misconduct exposes a jury to extraneous material, a new trial is warranted only "if the defendant likely suffered 'substantial prejudice' as a result of the jury's exposure to the extraneous information." *United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir. 2001).

---

Tr. of June 24, 2009, at 160-61.

[5] During a hearing on one of the multiple motions in limine related to the introduction of evidence of Carter's membership in the Bloods, Judge Rufe emphatically cautioned the parties:

> We are not going to have a trial about the Bloods, . . ., it's not how it was indicted. . . . So, keep it narrow, keep it focused, . . . It's about identifying enough about this defendant to connect him to the contents of the bag. . . . It doesn't even matter that Mr. Carter is alleged to be the leader, except for the documents in that bag which link him up to the contents of the bag, okay?

Tr. of September 12, 2008 Motion Hr'g, at 85.

7

A defendant bears the burden of demonstrating the likelihood of substantial prejudice. *United States v. Urban*, 404 F.3d 754, 777 (3d Cir. 2005).[6] We have identified several factors as especially relevant to the prejudice inquiry. The (non-exhaustive) list includes: (1) the nature of the information, *Lloyd*, 269 F.3d at 239; (2) the extent of the jury's exposure to the extraneous information, *id*. at 240; (3) the timing of when the jury received the extraneous information, *id.* at 240-41; (4) the length of the jury's deliberations and the structure of the verdict, *id.* at 241; (5) any instructions given by the trial court limiting the jury's consideration to evidence offered at trial and which instructions the jury is presumed to have followed, *id*.; and (6) the strength of the evidence supporting the verdict, *id*. at 242.

In this case, we are satisfied that no substantial prejudice occurred. We will assume that Juror #7 repeated her daughter's answer to at least one of her fellow jurors, who then made it known to the foreperson. Where, as here, the foreperson immediately brought the matter to the judge's attention and expressed the jury's collective concern that forbidden conduct had occurred, we are convinced that the jury paid careful attention to Judge Rufe's instructions and faithfully followed them. We credit, as did Judge Rufe, the jurors' negative response to her question whether the information had influenced any juror in any respect. We see no reason here to depart from our practice of deferring on delicate matters involving allegations of juror misconduct to the determination of a trial judge who has conducted a conscientious and tactful investigation of the facts. *See, e.g.*, *United States v. Boscia*, 573

---

[6] Unlike some courts, we do not "mechanically apply a presumption of prejudice every time a jury has been exposed to extraneous information." *Id*. at 777 n.9.

8

F.2d 827, 830-32 (3d Cir. 1978); *United States v. Coleman*, 805 F.2d 474, 481-82 (3d. Cir. 1986).

For the foregoing reasons, we will affirm the judgment of the District Court.