**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**SHAMARI ELMES, Defendant**

Criminal No. ST-09-CR-614

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 30, 2011

342

BRENDA C. SCALES, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, USVI, *Counsel for Plaintiff People of the Virgin Islands.*

JULIE SMITH TODMAN, ESQ., Territorial Public Defender, Territorial Public Defender's Office, St. Thomas, USVI, *Counsel for Defendant Shamari Elmes.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(August 30, 2011)

**THIS MATTER** is before the Court on Defendant Shamari Elmes's Motion for Mistrial.[1] Elmes asks this Court to order a new trial in the interest of justice pursuant to Rule 33 of the Federal Rules of Criminal Procedure[2] and Superior Court Rule 135. Having reviewed the Motion and trial transcript, the Court finds that the gang references made during the trial were unfairly prejudicial to Elmes and denied Elmes his right to a fair trial. The Court will, therefore, grant the Motion for Mistrial.

## RELEVANT FACTS

The Court held a jury trial in this matter on March 14 and 15, 2011. Following an incident that occurred on November 21, 2009 at Paradise Gate, the People of the Virgin Islands charged Elmes with unauthorized

---

[1] Defendant Shamari Elmes is represented by Julie S. Todman, Esq., of the Territorial Public Defender. The People of the Virgin Islands are represented by Brenda Scales, Esq., Assistant Attorney General.

[2] "The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the . . . Federal Rules of Criminal Procedure . . . . " SUPER. CT. R. 7.

343

possession of a firearm.[3] At trial, in response to the People's inquiry about a disturbance inside of Paradise Gate, Police Officer Joseph Brown testified that there were some young men that had been advised about waving "their bandanas in the air representing their gangs,"[4] and Officer Brown then testified that the young men were escorted outside the parking area. Elmes's attorney immediately stated her objection to the "gang reference."[5] The Court overruled the objection.

Officer Brown later testified that he observed Elmes receive an object from another individual in the parking lot, and that Elmes looked at the object in his hand. Officer Brown stated that he did not see the object that was handed to Elmes, but shared his observation with Officer Jason Marsh. While Officers Brown and Marsh approached parked vehicles, Kwame Benjamin, Elmes's co-defendant,[6] shouted at Elmes. Elmes, thereafter, lifted his head, turned towards a parked vehicle and placed an object on the ground near the right rear tire of the parked vehicle. The officers continued to approach and Elmes stepped away from the parked vehicle. Officer Brown stated that he shone his flashlight in the area in which Elmes placed the object and discovered a gun.

During redirect examination of Officer Brown, the People asked the following question: "Now, you had indicated with respect to a bandana, what was [Elmes's] involvement, if any, with respect to the disturbance?" Officer Brown answered that "[Elmes] was waving a red bandana, which is known in the Virgin Islands . . ."[7] Elmes's counsel objected to Officer Brown's answer on the grounds that it was highly prejudicial. The Court struck the testimony, advised the jury to disregard any statement about waving anything in the air and instructed the jury regarding the disturbance. Specifically, the Court advised the jury to "disregard any testimony about the disturbance in terms of how it would have related to the events surrounding Mr. Elmes's actual alleged possession of this

---

[3] V.I. Code Ann. tit. 14, § 2253(a) (1996).

[4] (Def.'s Mot. Mistrial, Ex. A Trial Tr. vol. 1, 19-20, Mar. 14, 2011.)

[5] (Id. at 20.)

[6] Benjamin was arrested on October 1, 2010 and charged with unauthorized possession of a firearm. Benjamin subsequently pleaded guilty to this charge and was sentenced on December 6, 2010.

[7] (Id. at 55.)

particular firearm, particularly, the question about any associations that may have existed."[8]

Further, the Court, concerned about the influence on the jury and Elmes's right to a fair trial, sought additional curative instructions from Elmes's counsel.[9] Believing that further curative instructions would not alleviate the taint for the jury, Elmes's attorney moved for a mistrial.[10] The Court reserved decision on the motion for a mistrial.

During summation, the People stated that "using your common sense, knowing what goes on in the community, knowing how young people."[11] Elmes's counsel objected to this statement as an implicit reference to gang activity and again moved for a mistrial. The People continued their summation and modified their argument by stating that "knowing how people act, knowing the truth when you hear it. Does this sound like the truth to you?"[12]

## DISCUSSION

■ In his Motion for Mistrial, Elmes cites Rule 33 of the Federal Rules of Criminal Procedure which states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Elmes also cites Superior Court Rule 135 which states that "[t]he court may grant a new trial to a defendant if required in the interest of justice." Although both Rules provide for the grant of a new trial in the interest of justice, the Court notes that Superior Court Rule 135 is the appropriate Rule.[13] Nonetheless, in the sound discretion of the Court,[14] a new trial may be granted if a defendant was unfairly prejudiced based on analysis of three factors. Those three factors are: (1) whether [a witness's] remarks were pronounced and persistent, creating a likelihood

---

[8] (*Id.* at 60.)

[9] (*Id.* at 62.)

[10] (*Id.*)

[11] (Def.'s Mot. Mistrial, Ex. B Trial Tr., vol. 2, 86, Mar. 15, 2011.)

[12] (*Id.*)

[13] *E.g., Stevens v. Virgin Islands*, 52 V.I. 294 (V.I. 2009); *People v. Brewley*, 49 V.I. 137, 139 n.2 (Super. Ct. 2007); *Gov't v. Baron*, 48 V.I. 88, 93 n.3 (Super. Ct. 2006).

[14] *Gov't v. Baron*, 48 V.I. 88, 93 (Super. Ct. 2006).

they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the [] court.[15]

In general, Rule 404 of the Federal Rules of Evidence states that evidence of a person's character or trait of character is inadmissible to prove conformity therewith on a particular occasion.[16] Elmes argues that the references to gang affiliation were both improper and that they tainted the jury's ability to decide the case. Elmes states that after the Court struck the testimony related to his waving a red bandana, and advised the jury to disregard the testimony, the People attempted to circumvent the Court's mitigating measures by drawing attention to gang activity in the community in their closing argument. Elmes also contends that the People's case against him is not strong, that it is built on circumstantial evidence and that none of the People's witnesses saw or knew that Elmes possessed a firearm.

In contrast, the People argue that the statement regarding the waving of the bandana and the disturbance is relevant to show motive, specifically why Elmes knowingly and intentionally possessed a firearm outside of Paradise Gate. Further, the People state that the gang reference was not persistent, that the other evidence presented at trial outweighs any possible prejudice to Elmes, and that the Court's curative instruction mitigated any prejudice to Elmes. Further, the People state that if the elicited testimony was improper, it is harmless.

█ Gang membership has frequently been found to be probative and admissible as providing evidence of a possible motive for the crime,[17] and to show bias,[18] identity, common design or purpose.[19] The Court, however, recognizes that evidence identifying a defendant as a member of a gang may be highly prejudicial, since juries may associate such groups with criminal activity and improperly convict on the basis of inferences as

[15] *United States v. Riley*, 621 F.3d 312, 336 (3d Cir. 2010).

[16] The Federal Rules of Evidence apply to this matter. *See, e.g., Chinnery v. Virgin Islands*, S. Ct. Crim. No. 2009-0037, 2011 V.I. Supreme LEXIS 14, at *35 (V.I. May 27, 2011).

[17] *See, e.g., United States v. Harris*, 587 F.3d 861, 868 (7th Cir. 2009); *Richards v. Tennis*, 199 Fed. Appx. 144 (3d Cir. 2006); *State v. Goodman*, 415 N.J. Super. 210, 1 A.3d 767, 776-77 (2010).

[18] *See*, e.g., *United States v. Gonzalez*, 155 Fed. Appx. 580 (3d Cir. 2005); *In re Wing Y.*, 67 Cal. App. 3d 69, 136 Cal. Rptr. 390 (1977).

[19] *See, e.g., United States v. Carter*, 410 Fed. Appx. 549 (3d Cir. 2011); *People v. Olivier*, 3 Ill. App. 3d 872, 279 N.E. 2d 363 (1972).

to the defendant's character. The Court acknowledges that any prejudice caused by improper evidence is ordinarily cured by an instruction to the jury to disregard the evidence.[20] In general, the determination as to whether or not such evidence of gang activity is unduly prejudicial is within the sound discretion of the Court.

█ During the trial, the Court became concerned about the prejudice to Elmes following the reference to gang membership. After advising the jury to disregard the testimony related to gang affiliation, the Court sought further curative instructions from Elmes's attorney. The Court also stated that "[t]he original testimony about gang activity . . . was containable, but then to repeat that and directly tying it to Mr. Elmes waving a red bandana, was [] going further into [gang activity]." Further, the Court questioned the purpose of eliciting such testimony.[21] The People responded that the testimony was relevant to show Elmes's association to people who were involved in a dispute. The Court explained that the reference associating Elmes to a gang, coupled with Officer Brown's testimony regarding his training as a police officer giving him a higher degree of credibility, was prejudicial to Elmes. Turning to the People's evidence presented at trial, the Court concludes that the People's case against Elmes is not strong. Particularly, the People's case is based on circumstantial evidence. Officer Brown's statement regarding gang activity, the People's elicitation of gang affiliation and the People's statement during their summation may have been sufficient to tip the balance against Elmes in a weak case.

██ Generally, a prosecutor's comments during closing argument warrant a mistrial only if: (1) the remarks were improper; and (2) the remarks prejudiced the [defendant]'s substantive rights.[22] After the People twice elicited testimony concerning gang activity and the Court advised the jury to disregard the same, the People, during its summation, made innuendoes related to gangs in the community. The Court concludes that the indirect suggestions were clear to a reasonable juror sitting through the trial and that the connection to Elmes was strong. Officer Brown, early in his testimony, indicated the meaning of the red bandana

---

[20] *See, e.g.*, *United States v. Sherman*, 440 F.3d 982, 987 (8th Cir. 2006).

[21] (Trial Tr. vol. 1, 63, Mar. 14, 2011.)

[22] *Edwards v. Gov't*, 48 V.I. 468, 478 (D.V.I. 2006); *see also United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995).

and then later stated that Elmes was waving a red bandana. Although the curative instruction may have alleviated any prejudice at the time,[23] the Court agrees with Elmes that the People's summation weakened the effect of such instructions and improperly influenced the jury. Specifically, the People's summation included the insinuation that related back to Officer Brown's testimony that the waving of red bandanas is associated with gang affiliation and that he had viewed Elmes waving a red bandana, after the Court had expressed concerns about the gang reference. Thus, the Court finds that Elmes was denied his right to a fair trial and will grant the Motion for Mistrial.[24]

## CONCLUSION

The Court finds that the testimony elicited by the People as to Elmes's gang affiliation and the insinuation about gang affiliation made by the People during their summation, unfairly prejudiced Elmes and deprived him of his right to a fair trial. The Court will, therefore, grant the Motion for Mistrial.

---

[23] *See, e.g., United States v. Roark*, 924 F.2d 1426, 1433-34 (8th Cir. 1991) (stating that inadvertent evidence that is "damaging but isolated, is easily remedied through a limiting instruction.").

[24] *Compare State v. Ballantyne*, 128 Ariz. 68, 623 P.2d 857 (1981) (disagreeing with a prosecutor who contended that a defendant's gang affiliation proved knowledge of the defendant's expertise with motorcycles, but the court opined that because the defendant already admitted his familiarity, such reference was improper and prejudicial to show evidence of bad character), *and People v. Perez*, 114 Cal. App. 3d 470, 170 Cal. Rptr 619 (1981) (finding the admission of a defendant's gang membership as an abuse of the trial court's discretion because the admission was prejudicial, of slight probative value in the prosecution of the defendant for kidnapping, robbery, and unlawful taking of a vehicle, and allowed the jury to infer "guilty by association"), *with United States v. Barlow*, 307 Fed. Appx. 678 (3d Cir. 2009) (denying a defendant's motion for a mistrial reasoning that although following a fleeting, general comment in the gang expert's testimony about the types of criminal activity in which the defendant's street gang engaged, the Court struck the comment from the record and issued a curative jury instruction, there was overwhelming evidence of the defendant's guilt, even without the expert's comment).